**Ex parte William G. LONG.**

No. 56264.

Court of Criminal Appeals of Texas, En Banc.

April 19, 1978.

Michael W. White and Andrew B. Logan, San Antonio, for appellant.

Bill M. White, Dist. Atty., Douglas C. Young, Alan E. Battaglia and Bennie F. Steinhauser, Jr., Asst. Dist. Attys., San Antonio, for the State.

## OPINION ON PETITIONER'S MOTION FOR REHEARING

TOM G. DAVIS, Judge.

Petitioner contends on motion for rehearing that: (1) "The Court of Criminal Appeals did not have the entire record of the hearing of the writ of habeas corpus in order to review that record in forming its opinion" and (2) That this Court erred in finding the petitioner's contention with regard to the DeWitt County conviction to be without merit "though the 24th District Court in DeWitt County had heard testimony of Petitioner's incompetency to stand trial in Cause No. 5910 [24th District Court number], the Court failed to hold a separate hearing on such issue as required in *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 14 L.Ed.2d 815 (1966) even though the testimony raised a bona fide doubt as to Petitioner's competency to stand trial."

The record reflects that at the hearing on petitioner's post conviction writs the transcription of the court reporter's notes of the trial which resulted in a mistrial in Cause No. 56,815 in Bexar County in November, 1958, was introduced into evidence as State's Exhibit No. 8. This exhibit was not in the record when our original opinion was written, although Art. 11.07, § 2(d), V.A.C. C.P., requires that the convicting court transmit to the Court of Criminal Appeals "the petition, any answer filed, any motions filed, transcripts of all depositions and hearings, any affidavits, and any other matters such as official records used by the court in

**762**

resolving issues." The transcription of the court reporter's notes in the Bexar County mistrial is now before us and we consider petitioner's contentions herein in light of such exhibit.

The two convictions involve the murders of A. B. Lippman and his wife Mary Lippman on May 19, 1958. Petitioner was originally tried for the killing of A. B. Lippman in Cause No. 56,815 in the Criminal District Court of Bexar County with the late Judge M. D. "Buck" Jones presiding, in November, 1958. A mistrial was declared after the jury was unable to reach a verdict. After the mistrial, the court ordered a change of venue, and transferred both cases to the 24th Judicial District Court of DeWitt County. A trial in DeWitt County of Cause No. 56,815 (Bexar County number) resulted in a verdict of guilty, and punishment was assessed at 99 years. After that trial in DeWitt County, the remaining cause, Cause No. 56,816, was transferred back to Bexar County, where the petitioner entered a plea of guilty to the murder of Mary Lippman. Punishment was assessed at 99 years, with the sentence to run consecutively with the DeWitt County sentence. No appeals were taken from either conviction.

Petitioner is challenging both of these convictions. He originally filed separate writs in Bexar and DeWitt Counties. On January 9, 1976, after the post conviction writ was filed in DeWitt County, that cause was transferred to the 144th Judicial District Court of Bexar County (formerly known as the Criminal District Court of Bexar County) by order of the 24th Judicial District Court. Petitioner expressly agreed that both writs should be heard in a joint hearing before the 144th District Court.

In both instances, the petitioner complains of the failure of the trial court to conduct a separate hearing on the issue of his competence to stand trial. This contention is bottomed on the holding of the Supreme Court in *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 14 L.Ed.2d 815 (1966). While the petitioner's convictions occurred before the decision in *Pate*, this Court has

held that Pate is retroactive. *Ex parte Halford*, 536 S.W.2d 230.

After the hearing on the writs, the court filed findings of fact and conclusions of law denying petitioner relief. This Court is not bound by such findings or conclusions of law. *Ex parte Hagans*, 558 S.W.2d 457, and cases there cited.

Evidence introduced at the hearing includes the transcription of the court reporter's notes from the mistrial in Bexar County and the subsequent plea of guilty to the murder of Mary Lippman in Bexar County. The record reflects that the transcription of the court reporter's notes from the trial in DeWitt County is no longer available.

The holding in *Pate v. Robinson*, supra, requires the court to hold a hearing on competency to stand trial whenever "the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial." The petitioner urges that there was sufficient indication of mental problems in each of his convictions to raise a "bona fide doubt" and thus require a hearing.

Since there is no transcription of the court reporter's notes available for the conviction in DeWitt County, the petitioner presented testimony from several sources at the writ hearing to indicate that the evidence bearing on his mental state which was introduced in DeWitt County was substantially the same as that which was introduced at the original trial which resulted in a hung jury in Bexar County. Richard Keene, who was one of petitioner's attorneys at the Bexar County mistrial and the DeWitt County conviction, testified that Mrs. S. R. Turner and Mrs. Ollie M. Wheeler testified at both of the trials. Keene said that their testimony was "substantially the same" at both trials and that he could "recall no basic differences in what they said."

The record of the mistrial in Bexar County reflects that Mrs. S. R. Turner testified that she ran the Lindell Hotel. Mrs. Turner first met the petitioner when he was referred to her by the Alamo Mission. She allowed petitioner to stay in her hotel for

four to six weeks and during that time she had the opportunity to observe his actions and his demeanor. Turner had also visited the petitioner "a number of times" while he was in jail awaiting trial. When questioned about petitioner's sanity, she testified as follows:

"Q. And, from all of this, Mrs. Turner, have you formed any opinion as to the sanity or the insanity of Will Long?

"A. Yes.

"Q. What is that opinion?

"A. In my opinion, he is not sane.

"Q. He is not sane?

"A. No, he is not.

\*  \*  \*  \*  \*  \*

"Q. Mrs. Turner, is this your opinion as to his present condition?

"A. Yes, it is."

The record from the mistrial also contains testimony of Mrs. Ollie M. Wheeler, who testified that petitioner had lived in her house with her for three weeks. Mrs. Wheeler testified she had been an attendant at the State Hospital in San Antonio. When asked her opinion of the mental condition of the petitioner, she replied he was "insane."

Keene also testified that the depositions which were introduced and read into evidence before the jury at the mistrial were also introduced in DeWitt County. Upon the proffer of each of the depositions, the prosecutor stated there was no objection by the State.

The first deposition introduced was that of Dr. Warren S. Wille, who was the Medical Director of the Psychiatric Clinic at the State Prison of Southern Michigan in Jackson, Michigan. Attached to the deposition, and read into evidence, was Dr. Wille's "Final Discharge Summary" of the petitioner, dated April 5, 1954, which said, in pertinent part:

"  .   .   . he would be classified as suffering from a sociopathic personality disturbance, antisocial reaction.   .   .   . His ego development has been very inadequate because of the extremely unfavorable home situation in which he grew up. This results in this subject showing some tendencies toward a schizophrenic reaction pattern. However, he has never actually had a psychotic break and cannot be considered insane at this time. Because of his poor ego development and inadequate self-control, his prognosis is very poor for ever making an adequate adjustment in free society."

In the deposition, Dr. Wille said: "  .   .   . this man was not insane as this term is customarily used. However, it was apparent, from information obtained from him during psychiatric interviews, that he was a very maladjusted person who was almost certain to get in trouble again when he returned to free society." Dr. Wille further stated that since he had not recently examined the petitioner he could reach no conclusion on his present mental state.

The deposition of Max Eugene Long, the petitioner's uncle, reflected the following:

"  .   .   . he was very uncooperative. He had a serious accident when he was very small. He has got a scar on his forehead today that he got in infancy; and they didn't think he would live at all at the time. He has never acted completely normal, never been completely normal since he was out of prison. He is very childish for a man of twenty-eight. He acted like a guy ten or eleven years old on a lot of different matters. He actually wanted to play with things kids would play with; go downtown and spend his money on things little children would buy."

Long further stated he considered the petitioner's "conduct and behavior" to be "abnormal."

The deposition of Mrs. Margaret Long Horton, the petitioner's aunt, was introduced. When asked to describe petitioner's "physical or mental condition," Mrs. Horton replied: "Acted childish all the time I knew him; he was injured in the head when young." Mrs. Horton concluded by saying the petitioner's "conduct and behavior was abnormal."

The deposition of William Hugh Long, who identified the petitioner as his nephew, related the seriousness of the head injury to petitioner when he was a child.

The deposition of Thomas George Long, another of petitioner's uncles, was also introduced. In the deposition, Long stated: "In my opinion, he is mentally unbalanced." The deposition further stated that the petitioner's "conduct and behavior from birth has been abnormal."

The final deposition was from Maggie Estella Long, the petitioner's grandmother. In the deposition she related that:

"Ten years ago, his mind went blank and wanted to kill Mike Lage in Marysville, Tennessee. He vomited and his eyes were blank. We had to put him to bed. He has had a mania for cars since a small child, which was beyond his control. He had an accident when two years of age, when his head was injured. He has been treated several times for mental disease. He has always been extremely emotional, and it grew worse at the death of his mother.

\*      \*      \*      \*      \*      \*

"He had periods of complete blackouts; he was highly emotional, was in the mental ward in Jackson, Michigan, at which time he was unbalanced. During blackouts—that is, before going completely blank—he would steal cars and drive them until the gas ran out."

On cross-examination at the writ hearing, Richard Keene, the petitioner's trial attorney, further testified that the trial in DeWitt County was "very very similar to the first trial." Keene said that Drs. Mullen, Keedy and Rogers "probably" testified in behalf of the State at the DeWitt County trial as they did in the first Bexar County trial.

The record of the Bexar County mistrial reflects that Dr. Brooks W. Mullen and Dr. David Keedy were both specialists in the field of neuro-psychiatry and had been appointed by the court to examine the peti-

tioner. Dr. Will C. Rogers was a clinical psychologist who had administered extensive tests to petitioner. All three testified that in their opinion the petitioner was "sane" or of "sound mind" both at the time of the killings and at the time of trial.

■ As we noted earlier, *Pate* requires a hearing whenever the evidence before the court raises a "bona fide doubt" as to a defendant's competency to stand trial. The evidence before a court to require a competency hearing need only be such as will raise the "bona fide doubt" referred to in *Pate*; it need not be conclusive on the issue. *Bonner v. State*, 520 S.W.2d 901; *Moore v. United States*, 464 F.2d 663 (9th Cir. 1972).

The State does not contest the fact that the petitioner offered all of the testimony at the DeWitt County trial relative to petitioner's mental condition that had been previously introduced at the mistrial. The record before us does contain the charge of the court from DeWitt County. The charge reflects that the court instructed the jury on the issue of sanity at the time of trial. While this charge is not conclusive, it provides strong evidence that the issue of present competency was in fact raised by the evidence presented in that trial. See *Ex parte Hagans*, supra; *Vardas v. State*, 488 S.W.2d 467.

■ We hold that the evidence related above was sufficient to create a "bona fide doubt" as to petitioner's competence to stand trial. It was thus reversible error for the court not to conduct a separate hearing to decide the issue.[1] *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, supra; *Ex parte Hagans*, supra; *Ex parte Halford*, supra; *Carpenter v. State*, 507 S.W.2d 794; *Noble v. State*, 505 S.W.2d 543; *Vardas v. State*, supra.

■ The State concedes the conviction in DeWitt County may be of "questionable validity" because no competency hearing was had, but calls our attention to the fact

1. While *Pate* would not require a jury trial on the issue, Texas law in effect at the time of

petitioner's trial would. See *Ex parte Hagans*, supra; *Townsend v. State*, 427 S.W.2d 55.

that petitioner's attorneys in that trial made a decision not to request a separate hearing as a matter of trial strategy. It is well established that the fact that no request or demand for a hearing was made by the accused is immaterial. Where evidence before the court raises a "bona fide doubt" concerning a defendant's competency, due process requires the trial judge on his own initiative to halt the trial and conduct a hearing. *Bonner v. State*, 505 S.W.2d 901, and cases there cited. In *Ex parte Hagans*, supra, this Court quoted with approval the following from *Taylor v. United States*, 282 F.2d 16, 23 (8th Cir. 1960):

" . . . if one is mentally incompetent, then, by definition, he cannot expect to raise that contention before the trial court and thus cannot be prejudiced by his failure to do so."

The petitioner's failure to request a separate hearing did not alter the court's duty to hold such a hearing when the evidence indicated one was called for.

There are two additional reasons the petitioner is entitled to relief from the DeWitt County conviction. First, this Court has found it to be a violation of due process any time the issue of present competency is submitted to the same jury that determines the merits. In *Ex parte Hagans*, supra, this Court said:

"The necessity of the separate hearing on the question of competency is so that the determination of an accused's competency can be made 'uncluttered by the evidence of the offense itself.' *Townsend v. State*, 427 S.W.2d 55, 63 (Tex.Cr.App. 1968). Such separate uncluttered hearing before a jury makes it easier to determine fairly the issue of competency without introducing facts which might tend to cloud the issue at hand, 'facts which alone might well so stir the minds of the jury as to make difficult the exercise of calm judgment upon the question of present [incompetency],' *Ramirez v. State*, 92 Tex.Cr.R. 38, 241 S.W. 1020, 1021 (1922).

See also *Lee v. Alabama*, 386 F.2d 97 (5th Cir. 1967).

"While Article 46.02, Vernon's Ann.C.C.P., was not in effect in 1961, the decision in *Ramirez* had been made, and the later decisions in *Townsend* and *Morales* [427 S.W.2d 51] are applicable. Due process was violated in the instant case by submitting the issue of competency to the same jury on the trial on the merits."

See also *Cavender v. State*, 515 S.W.2d 277; *Noble v. State*, supra; *Perryman v. State*, 494 S.W.2d 542.

In the instant case, the issue was submitted along with the rest of the jury charge. The jury returned a special verdict finding the petitioner was "sane" at the time of trial in addition to their verdict finding him "guilty" and assessing punishment at 99 years. This is a violation of due process, and is in itself sufficient grounds upon which to grant relief.

The final reason to grant relief from the DeWitt County conviction involves the standard which was used to determine petitioner's competency. In the jury charge, the court defined "insanity at the time of this trial" as follows:

"inability at the time of this trial of the defendant to understand the difference between right and wrong, or inability in mind to understand and appreciate the nature of the act charged against him in the indictment and the consequence thereof, or inability of the defendant in mind to make a rational defense concerning said act or offense."

This charge is based on the M'Naghten standard which was then used to determine sanity at the time of the act.[2]

■ The proper test of legal competence to stand trial is whether the accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d

---

2. The M'Naghten rule is no longer the standard for determining criminal responsibility in Texas. See V.T.C.A., Penal Code, Sec. 8.01.

824 (1960); *Ex parte Hagans*, supra, and cases there cited.

It is a violation of due process to measure competency to stand trial by any standard besides that set forth in *Dusky*. In *Ex parte Hagans*, supra, this Court quoted with approval the following from *Bruce v. Estelle*, 483 F.2d 1031 (5th Cir. 1973):

" . . . we are firm in the conclusion that the M'Naghten rule cannot be used as a standard to determine competency to stand trial. Again we emphasize that the appropriate standard required by the federal constitution is set forth with simple clarity in *Dusky v. United States*, supra.

\* \* \* \* \* \*

"The *Dusky* standard emanates from and is given vitality by the due process clause of the fifth amendment."

We conclude that petitioner is entitled to the relief prayed for in the DeWitt County conviction.

█ Our consideration of the record in the mistrial in Cause No. 56,815 in November, 1958, does not alter the correctness of our holding on original submission that the court did not err in failing to hold a separate hearing on the issue of competency when petitioner entered a plea of guilty on February 25, 1959, in Cause No. 56,816, where he was charged with the murder of Mary Lippman. Not only was there an absence of evidence of incompetency at this trial, the record reflects that the State called Dr. J. B. Polka, who testified that his specialty was psychiatry, that he had examined petitioner, and that in his opinion petitioner was sane. In light of the foregoing, we cannot find that the judge was in error in failing to hold a hearing on competency to stand trial based on conflicting testimony regarding petitioner's competency at a trial held four months earlier.

Petitioner's motion for rehearing is granted and the relief sought as to the conviction in DeWitt County in Cause No. 5910 under indictment No. 56,815 out of Bexar County is granted. In light of the fact that this case has been transferred back to the 144th District Court of Bexar County, petitioner is ordered to be released to the Sheriff of Bexar County to answer indictment in Cause No. 56,815.

It is so ordered.