**Edward Eldon CORLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 58703.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 21, 1979.

Rehearing Denied April 25, 1979.

James Knowles, Mike A. Hatchell, Tyler, Kenneth H. Crow, Waco, for appellant.

A. D. Clark, III, Dist. Atty. and William Saban, Asst. Dist. Atty., Tyler, for the State.

## OPINION

DOUGLAS, Judge.

Edward Eldon Corley appeals his conviction for capital murder. The jury returned affirmative findings to special issues concerning whether Corley acted deliberately and whether he would commit further acts of violence. The court assessed his punishment at death.

Vicki Lynn Morris was abducted from the Hebron Baptist Church in Tyler in the late afternoon as she played "The Old Rugged Cross" on the church organ. The following morning her body was found about four miles from the church. She had been shot with a 410 gauge shotgun and she had been raped. Three days after her abduction, appellant was arrested by the sheriff of Panola County. The murder weapon was found in appellant's pickup truck. After he was taken to Smith County he confessed to killing Vicki Lynn Morris. Later he confessed to raping her prior to the murder.

A hearing on appellant's competency to stand trial was held in Smith County. Then venue was changed to McLennan County.

Corley contends the trial court committed error at the pre-trial competency hearing by submitting to the jury a definition of competency to stand trial that was fundamentally erroneous and a denial of due process. Prior to trial appellant filed a motion for a hearing to determine his competency to stand trial. A jury was impaneled, heard the evidence and received a charge which contained the following standard for determining appellant's competence:

> "To establish insanity at the present time it must be established by a preponderance of the evidence that the defendant is laboring under such mental disease or defect of the mind as to be rendered incompetent to make a rational defense to the charges against him."

Prior to the submission of the charge, appellant requested that the following language be substituted:

> "To establish insanity at the present time, it must be established by a preponderance of the evidence that the defendant does not, by reason of mental disease or defect, have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and that he does not have a rational or factual understanding of the proceedings against him. In this regard, you are instructed that the term mental defect may include mental retardation."

Corley argues that the standard submitted in the charge was constitutionally impermissible.

A review of the relevant United States Supreme Court cases is necessary. In *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956), the Court held that conviction of a mentally incompetent individual violates the due process clause. *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), which dealt with a federal prosecution, held that the standard which required only that a defendant be "oriented to time and place and [have] some recollection of events" was inadequate. *Dusky* required that the standard, in federal prosecutions, be that the defendant have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), attempts to "resolve the difficult question of state-federal relations" posed by *Bishop* and *Dusky*. The *Pate* court first applied the *Bishop* rule to the states and further held that state procedures must be adequate to insure that an incompetent individual is not tried. Finally, in *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), the Court held that because there was sufficient evidence raised at the state trial concerning the defendant's incompetence due process was denied by the state's failure to conduct a hearing into the defendant's competency. The Supreme Court has never held that the standard set forth in *Dusky* was constitutionally mandated as the only standard under which a state can determine an individual's competency.

The relationship between the federal and state courts concerning the standard for determining insanity at the time of the offense presents an interesting parallel. The federal courts have long expressed dissatisfaction with the M'Naghten Rule for determining insanity. While most American jurisdictions have rejected this outmoded test, the federal courts have not held that it is constitutionally forbidden. *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952); *Corley v. Cardwell*, 544 F.2d 349 (9th Cir. 1976) cert. denied 429 U.S. 1048, 97 S.Ct. 757, 50 L.Ed.2d 763 (1977).

The Supreme Court has recognized the difficulty of constitutionally requiring a specific standard when dealing with psychiatric-legal principles. In *Leland*, Mr. Justice Clark wrote:

"The science of psychiatry has made tremendous strides since the test was laid down in M'Naghten's case, but the progress of science has not reached a point where its learning would compel us to require the states to eliminate the right and wrong test from their criminal law. * * * In these circumstances it is clear that adoption of the irresistible impulse test is not 'implicit in the concept of ordered liberty.'"

Similarly, Mr. Justice Marshall, writing for the plurality in *Powell v. Texas*, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968), stated:

"This definitional confusion reflects, of course, not merely the undeveloped state of the psychiatric art but also the conceptual difficulties inevitably attendant upon the importation of scientific and medical models into a legal system generally predicated upon a different set of assumptions. * * * It is simply not yet the time to write into the Constitution formulas cast in terms whose meaning, let alone relevance, is not yet clear either to doctors or to lawyers."

The Supreme Court has held that an incompetent individual cannot be tried and that a state's procedures must be adequate to ensure that this does not happen. The Court has also held constitutionally adequate a standard which tests (1) whether an individual understands the charge against him and (2) whether he can communicate with his attorney.

■ In the instant case the court submitted the issue of appellant's competency to the jury. He submitted a definition of present insanity under which appellant must be able "to make a rational defense to the charges against him." If appellant could not understand the charges against

him, he would not be able "to make a rational defense to the charges against him." Similarly, if he could not communicate with his attorney, he would not be able "to make a rational defense to the charges against him." The charge given by the court was broad enough to comply with *Dusky.* The charge provided adequate procedural safeguards to ensure that an incompetent individual would not be convicted. We hold that the charge given in this case did not deny appellant due process.

In *Ex parte Long,* 564 S.W.2d 760 (Tex. Cr.App.1978), relied upon by the dissent, the main fault with the charge was that it gave the "right and wrong" test as a basis of his competency to stand trial. The court instructed the jury as follows:

". . . 'inability at the time of this trial of the defendant to understand the difference between right and wrong, or inability in mind to understand and appreciate the nature of the act charged against him in the indictment and the consequence thereof, or inability of the defendant in mind to make a rational defense concerning said act or offense.' "

The trial court required the jury in effect to find that the defendant did not understand the difference between right and wrong and as a result thereof he could not make a rational defense to the act or offense. The right and wrong test was not in the instruction to the jury in the present case.

Corley next contends that his confessions were inadmissible for numerous reasons. After his arrest at 7:30 a. m. on September 17, 1974, in Panola County, Corley was taken before a Panola County magistrate. Corley was subsequently informed that his mother had obtained an attorney to represent him. However, Corley stated he did not want to talk to his mother or the attorney. He also declined to use the telephone on several occasions when he was offered an opportunity to use it. Appellant was taken before a second magistrate and again warned. At 4:20 p. m. on the day of his arrest he signed a confession.

The attorney hired by appellant's mother testified that he was hired only to represent Corley at the time of the arrest. He also stated that he was never prevented from seeing Corley.

On November 1, 1974, the district attorney went to see Corley in response to a letter from Corley stating he had other things to tell him. At this time Corley added additional facts to his original confession.

Corley was indigent during the time he was held in jail. Counsel was appointed for him after he gave the second confession.

■ Appellant argues that the confessions were inadmissible because he did not have an attorney to explain his rights to him and he had a per se right to appointment of counsel within a reasonable time after his arrest. There is no per se right to counsel prior to taking a confession. *Woodkins v. State,* 542 S.W.2d 855 (Tex.Cr.App. 1976). Appellant did not request an attorney when he was taken before the magistrates and informed of his right to an attorney. He made no request to anyone in the jail for an attorney. Under these circumstances there was no error in the State's failure to provide him with an attorney.

■ Appellant also contends that because he was "retarded" he did not possess sufficient mental capacity to make a knowing, intelligent and voluntary waiver of his rights. Four expert witnesses testified concerning appellant's mental capacity. The experts disagreed over whether or not appellant was retarded although there was a consensus that his IQ was in the low 70's. The defense experts testified that Corley was not able to understand the warnings given to him prior to his making the confessions. The prosecution experts testified that he was able to understand the warnings. The finder of facts resolved this conflict against appellant. We cannot substitute our judgment concerning the credibility of the witnesses. We hold that the trial court had sufficient evidence before it to conclude that there was a voluntary and intelligent waiver by appellant of his rights before he confessed.

■ Complaint is next made of the following written response made by the court to the jury's request for the testimony of the psychologists and psychiatrists:

"With reference to your requests, you are instructed that the Law does not permit a general rereading of the testimony of any witness or witnesses, and in this connection, you are instructed that the Law in this regard provides as follows:

" 'In the trial of any criminal case in any District Court of this State, if the Jury disagrees as to the statement of any witness, they may, upon applying to the Court, have read to them from the Court Reporter's notes that part of such witnesses' testimony on the particular point in dispute, and no other.' Unless the Jury has disagreed upon some part of the testimony under the above law, you are not entitled to have any of the testimony reread, but, if you have disagreed upon any point or points in the testimony, and you will so state to the Court in writing, and point out in writing the point or points upon which you have disagreed, then the Court will have the Court Reporter read back to you only the testimony on the point or points in dispute and no other, as best as such testimony can be selected from the recorded testimony. In the event you should state to the Court that you have disagreed as to the testimony of the witness or witnesses referred to above on any point or points and request that the testimony be read back on any point or points, you are instructed that the Court Reporter will need sufficient time to examine all of the testimony of the witness or witnesses in order to get all of the testimony on the point or points concerning your inquiry, and it will take the Court Reporter as long to read the testimony back as it did to put it on, and in the event you ask for such testimony the Court will request you to be patient and allow sufficient time for this to be done in order for you to get the matters you have requested."

The record does not reflect any objection to this response.

Article 36.14, V.A.C.C.P., requires a written objection to a charge before this Court can review the error. There was no effort made to comply with that provision. Reviewing the charge as a whole, it is an accurate statement of the law and facts and is not improper.

Appellant's next group of contentions concerns 218 pages of material written by him in jail. This material was in the custody of the State but was given to the defense on October 20, 1975—two days prior to the beginning of voir dire. Appellant filed a motion for continuance so that he could examine this material. That motion was denied. At the motion for new trial hearing, appellant alleged that the prosecutor committed misconduct by suppressing this material. He introduced the 218 pages into the record.

Corley urges that the denial of the continuance and the motion for new trial was improper. The material was written by appellant while in jail. He was fully aware of it. There was no specific request for this material. It was not signed by appellant. It was not introduced into evidence. It had no relevance, except insofar as it might relate to his mental condition, on the issues in the trial.

■ Consideration of a motion for continuance is vested in the sound discretion of the trial judge. *Ewing v. State*, 549 S.W.2d 392 (Tex.Cr.App.1977); *Chance v. State*, 528 S.W.2d 605 (Tex.Cr.App.1975). There was no abuse of discretion shown. Since appellant was aware of the written material, he cannot claim that the prosecutor suppressed it. *Means v. State*, 429 S.W.2d 490 (Tex.Cr. App.1968). See *Ogle v. State*, 548 S.W.2d 360 (Tex.Cr.App.1976). No prosecutorial misconduct is shown.

■ Corley next contends that the court should have instructed the jury not to consider the oral testimony which laid the predicate for exhibits which ultimately were not admitted into evidence. Curtis Owen, the Smith County District Attorney, gave testimony that laid a predicate for the introduction of two letters from Corley to

Owen. When the State sought to have these letters admitted, the jury was removed and appellant made several lengthy objections, all of which were overruled. The State then withdrew their offer of the exhibits. Appellant made a motion that the jury be instructed to disregard Owen's oral testimony concerning the exhibits. The court overruled the objection because it was not made at the time the testimony was given.

There was no objection made by appellant at the time Owen was testifying. Appellant's objection did not occur until after all of Owen's testimony. Under these circumstances, nothing is presented for review.

Finally, appellant contends that his motion to quash the indictment should have been granted because our capital punishment procedure is constitutionally impermissible. He argues that the trial court has too much discretion in accepting evidence, that a mandatory death sentence is required, that the second special issue submitted to the jury is vague, that our law constitutes a bill of attainder and that the allegation of "committing and attempting to commit aggravated rape" is duplicitous and repugnant.

We have rejected these arguments before. Our capital punishment procedure is constitutional. *Jurek v. State*, 522 S.W.2d 934 (Tex.Cr.App.1975), affirmed 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929. Appellant's contention that the indictment is duplicitous and repugnant has also been rejected. In *Jurek*, we upheld an indictment that alleged "in the course of committing and attempting to commit kidnapping of and forcible rape." Corley's objections to the indictment are overruled.

By way of post-submission brief, appellant also contends that admission of his oral confession through the testimony of Dr. Tynus NcNeel was error. He complains of the following:

". . . However, I do think, from reading some of his writings, that he would be able to read and understand this material [the confession], certainly, for

the most part. What I particularly think is important, if I might, is, that this information is essentially the information that was told me by Mr. Corley. So, I feel rather confident in having the opinion that he was aware of this information, and aware of the nature of it, because it was discussed in some detail with me. I stated a while ago, that I was familiar with the story on these papers. And I am familiar with it, from a first hand account of it with him."

Appellant did not object to this testimony. He did not raise it in his brief filed with the trial court.

Statements made by an accused during a psychiatric examination to determine his competency to stand trial are inadmissible. Article 46.02, V.A.C.C.P. In the instant case, appellant's confessions were before the jury. McNeel's testimony did not add any new factual statements made by Corley. The testimony was cumulative. Appellant did not object on any grounds.

The failure to object amounts to a waiver of even constitutional grounds. *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976). See *Boulware v. State*, 542 S.W.2d 677 (Tex.Cr.App.1976).

There is no reversible error. The judgment is affirmed.

ODOM, Judge, dissenting.

I dissent to the majority's disposition of appellant's tenth ground of error in which he contends the trial court committed error at the pre-trial competency hearing by submitting to the jury a definition of competency to stand trial that was fundamentally erroneous and a denial of due process. Error at a pre-trial competency hearing may now be raised on appeal from the subsequent conviction. *Jackson v. State*, Tex.Cr. App., 548 S.W.2d 685.

Before trial appellant filed a motion for a pre-trial hearing to determine his competency to stand trial. A jury was impaneled

to decide the issue and after evidence was heard the trial court instructed the jury to determine the issue by this standard:

"To establish insanity at the present time it must be established by a preponderance of the evidence that the defendant is laboring under such mental disease or defect of the mind as to be rendered incompetent to make a rational defense to the charges against him."

Before this charge was submitted to the jury appellant requested a charge with this definition:

"To establish insanity at the present time, it must be established by a preponderance of the evidence that the defendant does not, by reason of mental disease or defect, have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and that he does not have a rational or factual understanding of the proceedings against him. In this regard, you are instructed that the term mental defect may include mental retardation."

It is well settled that the definition of competency encompasses a two-part test. That test as set out in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as a factual understanding of the proceedings against him." That standard was subsequently applied by the United States Supreme Court in *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), and in *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). The *Dusky* test has been recognized by this Court in numerous cases. *Ex parte Hagans*, Tex.Cr.App., 558 S.W.2d 457; *Ainsworth v. State*, Tex.Cr.App., 493 S.W.2d

517; *Sandlin v. State*, Tex.Cr.App., 477 S.W.2d 870.

The trial court's deviation from the *Dusky* standard was fatal in this case. Although the charge given by the judge in the instant case did not use the M'Naghten rule, as has been held improper for determining competency, it did use an instruction similar to a part of the instruction given in *Ex parte Long*, 564 S.W.2d 760 (Tex.Cr.App., En Banc, 1978). There the trial judge instructed the jury that the standard to use to determine the competency of the accused was:

"Inability at the time of this trial of the defendant to understand the difference between right or wrong, *or* inability in mind to understand and appreciate the nature of the act charged against him in the indictment and the consequence thereof, *or* inability of the defendant in mind to make a rational defense concerning said act or offense." (Emphasis added).[1]

The third of the alternatives submitted in that charge was substantially the same as the standard submitted in this case. The last part of that charge measured competency by the ability of the accused "to make a rational defense concerning said act or offense," while the present charge similarly instructed the jury that the standard of incompetency was whether or not the accused had the ability "to make a rational defense to the charges against him." The jury charge on the competency issue in this case was as fully deficient with respect to the constitutional requirements of *Dusky* as was the one in *Long*. To instruct the jury that they must find whether the defendant was mentally competent to rationally prepare a defense leaves the jury to speculate as to what legal test is properly applicable.

1. The Court in *Long* held that the charge was based upon the M'Naghten standard and the application of such a standard constituted a violation of due process because it measured the competency to stand trial by a standard other than that set forth in *Dusky*. The majority do not adequately distinguish the charge used in *Long* from the one submitted in this case. The charge in *Long* was in the alternative and included the terms used in this case. In fact, the charge in *Long* was more protective of the defendant than the one here, in that one of the alternative standards in that charge was whether the accused could understand and appreciate the nature of the act charged against him in the indictment. Yet, even that was held insufficient.

Such a test falls far short of what is required by *Dusky*, supra.

Since the issue of the appellant's competency to stand trial was decided under a standard which did not afford him due process of law, the appellant is entitled to a determination of such issue under the proper standards. Furthermore, inasmuch as appellant pointed out the defect in the trial court's charge by adequate request for a proper instruction, he is also entitled to reversal on state grounds for the trial error in overruling that request. Under state law, appellant was entitled to a more precise instruction to the jury on the standard to determine competency than the conclusionary "rendered incompetent to make a rational defense to the charges against him."

It is also transparently clear that the majority have devalued the constitutional basis of the *Dusky* test in their effort to analogize the competency issue with the issue of insanity at the time of the offense. These two matters will not support the bridge the majority have attempted to erect between them. There is no established constitutional right to the insanity defense, whereas the right to a fair competency determination is of established constitutional magnitude. It is from this very difference that the insanity defense cases quoted by the majority carry no weight in deciding the issue in this case.

The insanity defense cases exhibit flexibility on the matter of standards, yet no such flexibility characterizes the competency issue. Inasmuch as the insanity defense springs from the inexact if not inconsistent realms of the behavioral sciences, it is to be expected that the standards experimented with on that issue should exhibit considerable difficulties whenever a rigid formulation of the issue is attempted. This is partly because that issue encompasses ethical and legal considerations that reach beyond any fact determination by behavioral scientists. See, *Graham v. State*, Tex.Cr.App., 566 S.W.2d 941; *United States v. Brawner*, 153 U.S.App.D.C. 1, 471 F.2d 969.

The test for competency to stand trial, on the other hand, is a matter of federal constitutional right, is uniform throughout the land, is not beset with inconsistencies, and speaks to the heart of the matter: does the accused have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and does he have a rational as well as factual understanding of the proceedings against him.

In this case appellant specifically requested a charge in the language of the constitutionally mandated standard. The majority, by approving a test that asks whether the accused was rendered "incompetent to make a rational defense to the charge against him," have deprived appellant of a fair determination of the competency issue. In this case, the jury, as the fact finder for the competency issue, was given no guidance on what standard to apply. Without any elaboration on what constitutes incompetence, they were instructed to decide whether he was incompetent. The purpose of a jury charge is to instruct the jury on the law. Without guidance on the law the jury cannot do its job. It received no guidance here, and therefore no fair determination of appellant's competency to stand trial was made. Appellant specifically requested a proper charge on the issue. The trial court committed reversible error under state law when it denied appellant's requested charge, and it committed reversible error under federal constitutional law when it submitted the erroneous instruction to the jury. The majority are wrong on both state and federal grounds and the judgment should be reversed.

I dissent.

ROBERTS, PHILLIPS and CLINTON, JJ., join this dissent.