Williams-RM v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-036-CR

        RONALD McEARL WILLIAMS,
                                                                                               Appellant
        v.

        THE STATE OF TEXAS,
                                                                                               Appellee
 

From the 272nd District Court
Brazos County, Texas
Trial Court # 20,802-272
                                                                                                    

O P I N I O N
                                                                                                    

          Appellant Williams appeals his conviction by a jury on two enhanced counts of burglary
of a motor vehicle enhanced. The State sought to prove that on September 11, 1991, at about 4:30
A.M., two vehicles in a Bryan apartment complex parking lot were burglarized during a police
stakeout and that Appellant was guilty as a party to the burglaries. The State introduced evidence
that Appellant drove a car which brought the burglar to the scene, departed briefly after dropping
its passenger, and returned to the scene a short time later, as if to retrieve his passenger, only to
then flee police. The person who actually broke into the vehicles escaped. The court sentenced
Appellant to fifteen years confinement and a $1000 fine for count one, and ten years' probation
and a $1000 fine for count two.
          Appellant brings two points of error. He complains that the evidence was insufficient to
prove beyond a reasonable doubt that he had aided or attempted to aid an unknown person in
burglarizing two motor vehicles. Appellant asserts in point two that the court erred in allowing
the State's improper jury argument which allegedly injected new and harmful facts outside the
record and invited jurors to speculate about harmful facts not in evidence. We will affirm the
judgment.
          Our standard of review in determining the sufficiency of the evidence is whether, viewing
both the direct and circumstantial evidence in the light most favorable to the verdict, any rational
trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See
Turner v. State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991). While mere presence in the
vicinity of a crime, even when accompanied by flight, is not alone sufficient to uphold a
conviction, the evidence in this case supportive of Appellant's conviction is more than
circumstantial. See Moore v. State, 532 S.W.2d 333, 337 (Tex. Crim. App. 1976); Ysasaga v.
State, 444 S.W.2d 305, 308-09 (Tex. Crim. App. 1969). Moreover, flight by the accused is
probative, circumstantial evidence from which an inference of guilt may be drawn. Ysasaga, 444
S.W.2d at 308. 
          The record reflects that in the early morning hours of September 11, 1991, four Bryan
police officers were staked out in their personal cars in the parking lot of an apartment complex
called The Oaks. They were attempting to apprehend the persons responsible for numerous auto
burglaries at similar apartment complexes. 
          At about 4:30 A.M., a maroon car, later identified as a Pontiac Grand Prix, drove into the
south entrance of The Oaks parking lot, circled the lot slowly, and returned to the south entrance,
where it stopped. The officers observed that the car was occupied by two black males, a driver
and a front seat passenger. As the car circled the lot, two of the officers were able to see the car's
license plate and noted the number as 955-GUF or 955-GHF. Officer Wager, who had been
staked out near the south entrance, positively identified the license plate of the car as 955-GUF. 
When the car stopped at the south entrance, its passenger alighted and the car then drove out of
the south entrance away from the lot. Officer Wager followed the passenger as he walked into the
lot itself. Within five minutes, Officer Wager heard a thumping noise followed by glass shattering
and saw the passenger leaning inside the driver's window of a Mazda pickup. Two vehicles
parked side-by-side had been broken into, and a stereo was removed from one of them. Officer
Wager attempted to catch the burglar, who threw down the stereo he held and ran past the officer
to the south entrance. As the officer chased the burglar, the same maroon car reentered the
parking lot at the south entrance. The driver was the only person in the car when it returned to
The Oaks. The burglar initially ran toward the car, hesitated briefly, then took off into the woods
near the south entrance.
          Officer Wager drew his gun and ordered the driver of the car to stop; however, the driver
immediately accelerated, turned, and sped out of the north parking lot entrance. Although Wager
was able to get what proved to be the correct license number for the car, he testified that he did
not get a good enough look at the driver to identify him. 
          The speeding car barely avoided two marked patrol cars (which had not been a part of the
stakeout) blocking the north entrance. Officer Duane Hill, who occupied one of the two patrol
cars, testified that he had been on his regular 10 p.m. to 6 a.m. shift and had been unaware of the
apartment complex stakeout. However, when he first heard "radio traffic" from that area and then
heard that an officer was involved in a foot pursuit, he headed for The Oaks. Hill and another
officer pulled their cars into the north entrance, with overhead lights on. According to Hill, the
maroon car, which was attempting to exit the north entrance, turned in front of Hill's patrol car
and drove along the shoulder of the road. Hill testified that he saw only one person, the driver,
in the car. Officers Hill and Smith chased the car north for approximately a mile before it missed
a right turn onto a highway exit ramp and slid into a ditch. The driver then jumped from the car
and began running. Hill jumped from his patrol car and pursued the driver on foot. Hill, who
had a flashlight, described the driver as wearing a white or light-colored shirt, shorts and black
shoes. He chased the driver approximately 150-200 yards through an open field, over a barbed-wire fence and into a wooded area where he finally caught him. At one point during the chase on
foot, the driver disappeared over an embankment and was briefly out of the officer's sight. When
Officer Hill reached the top of the embankment, he stated that the defendant was approximately
fifty yards ahead of him. The officer apprehended Appellant, his body covered with scratches,
after he stumbled and fell on a fire ant bed. At trial, Officer Hill unequivocally identified
Appellant as the man he had chased from the maroon car and finally apprehended.
          The defense primarily relies upon the brief moments when the pursuing officer had
temporarily lost sight of Appellant as he disappeared on the far side of the embankment to attack
the sufficiency of the evidence to support the identity of the person apprehended (Appellant) as
being the same person who had driven the maroon car. Appellant also claims that, because one
of the officers believed the driver to be a black male with a light complexion and Appellant is very
dark, the evidence was insufficient to prove that he was the driver of the maroon Pontiac Grand
Prix. Appellant claims that there is reasonable doubt that the man chased was the same man who
was apprehended—that is, Appellant.
          The four officers who actually participated in the stakeout at the apartment complex
testified that they could not see the faces of either the driver or the passenger well enough to
identify either. One of those officers testified to his prior written (erroneous) statement—that the
driver was a light-complected black male and that the car initially turned left upon fleeing him. 
However, Officer Hill, who actually chased the driver of the maroon Grand Prix and later
apprehended him after he jumped from the ditched car, testified that Appellant was the man he had
pursued and caught. 
          In light of the direct testimony contained in the record as summarized above, neither of
Appellant's arguments are persuasive. Officer Hill's sworn testimony is sufficient for the jury to
have found that Appellant was the person who was driving the maroon automobile. This court
cannot substitute its judgment concerning the credibility of the witnesses for that of the jury. See
Corley v. State, 582 S.W.2d 815, 819 (Tex. Crim. App. 1979). Point one is overruled.
          In point two, Appellant complains that the trial court erred in allowing the State's improper
jury argument which injected new and harmful facts outside the record and invited the jurors to
speculate about matters not in evidence. The argument in question attempted to solidify
Appellant's connection with the maroon car, its owner, Queen Gaines, and Alex Ross, whose
fingerprints had been found on the automobile. The State argued: "Some of the unanswered
questions I have on this are; how'd the defendant get Ms. Gaines's car? I mean, she was sworn
in as a Defense witness but they never called her to say how this Defendant got her car. They
never called her to say when he got her car. They never called her to say what her relationship
might be to Alex Ross or bring anybody to testify . . . ."
          The State may comment on the defendant's failure to call competent and material witnesses
and may further argue that the reason for such failure is that the testimony would have been
unfavorable to the defense. Garrett v. State, 632 S.W.2d 350 (Tex. Crim. App. 1987). 
Moreover, argument in which the jury is asked to make reasonable deductions from the evidence
is proper. Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).
          The evidence had shown that the maroon Grand Prix, license plate 955-GUF, was owned
by a woman named Queen Gaines. She had been sworn as a defense witness immediately
following the entry of Appellant's plea of not guilty to the indictment. The jury could reasonably
infer that, if she had loaned her car to someone other than the Appellant, she could have readily
testified to that fact. 
          The jury had also heard testimony that a fingerprint of a person by the name of Alex Ross
was found on the passenger-door window of Gaines' car. Gaines could have explained the
connection, if any, between Alex Ross and the car used in the burglaries.
          The argument of which Appellant complains is well within the permissible guidelines set
forth above. Even if it could be said that the argument improperly called upon the jury to
speculate about matters not in evidence, we do not find that it injected new and harmful facts
sufficient to constitute reversible error. See Duffy v. State, 567 S.W.2d 197, 206 (Tex. Crim.
App. 1978).. Point two is overruled.
          We affirm the judgment of the trial court.
                                                                                 PER CURIAM

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed February 3, 1993
Do not publish