Ex parte Stephen A. McWILLIAMS.

No. 64508.

Court of Criminal Appeals of Texas, En Banc.

Oct. 15, 1980.

On Rehearing May 12, 1982.

Second Rehearing Denied July 14, 1982.

Robert L. Ketchand, Houston, for appellant.

Robert Huttash, State's Atty., Austin, for the State.

OPINION

TOM G. DAVIS, Judge.

This is an application for writ of habeas corpus filed pursuant to Art. 11.07, V.A.C.C.P. On July 24, 1975, petitioner entered pleas of guilty to the offenses of aggravated robbery, aggravated rape and aggravated kidnapping. Punishment in each cause was assessed at thirty years. Petitioner now raises numerous contentions concerning the validity of each of these convictions.

Initially, he maintains that his indictment for aggravated rape is fundamentally defective for failure to allege a culpable mental state. The indictment alleges in pertinent part that petitioner did then and there:

"unlawfully, by force and threats, and without the consent of Mrs. J____ L____, ravish and have sexual intercourse with Mrs. J____ L____, a female not then and there the wife of the said Stephen McWilliams, and the said Stephen McWilliams did compel submission by Mrs. J____ L____ to said ravishment and sexual intercourse by threatening to inflict death and serious bodily injury to the said Mrs. J____ L____."

In Ex Parte Smith, 571 S.W.2d 22, this Court held that in order to establish criminal responsibility for the offense of rape, the State must allege and prove that the defendant acted intentionally, knowingly, or recklessly. V.T.C.A. Penal Code, Sec. 6.02. When a culpable mental state is an element of an offense and the indictment fails to allege that element, the indictment is fundamentally defective and will not support a conviction. See, Zachery v. State, Tex.Cr.App., 552 S.W.2d 136.

We find that petitioner's indictment for aggravated rape fails to allege an offense and that the conviction based thereon is void. The relief sought as to the conviction in Cause No. 10,170 in the 23rd Judicial District Court of Fort Bend County is granted and the indictment is ordered dismissed.

Petitioner next contends that he was subject to double jeopardy and the carving doctrine was violated when he was convicted upon the same evidence for two offenses arising out of the same continuous assaultive transaction involving a single victim.

The record reflects that on March 21, 1975, petitioner robbed at gunpoint the clerk of a grocery store in Arcola. Immediately thereafter, petitioner forced the clerk to leave the store with him in an automobile.

In two recent cases, we have held that the carving doctrine precluded convictions for both aggravated robbery and aggravated rape, where it was shown that both offenses resulted from one continuous assaultive transaction against the same victim. Orosco v. State, Tex.Cr.App., 590 S.W.2d 121; Ex Parte Curry, Tex.Cr.App., 590 S.W.2d 712. In Orosco, it was found that where the use and exhibition of a knife provided the aggravating circumstances in both offenses, appellant could not be convicted in both. Likewise, in Phillips v. State, Tex.Cr.App., 597 S.W.2d 929 it was held that convictions for both aggravated kidnapping and aggravated sexual abuse resulting from one continuous assaultive transaction against the same victim violated the carving doctrine. Lastly, in Tatum v. State, Tex.Cr.App., 534 S.W.2d 678, it was held that convictions for three offenses arising out of a single transaction against a single victim violated the double jeopardy clauses of both the State and Federal Constitutions, and required reversal of two of the three convictions.

We find that the evidence supports the trial court's finding that one of petitioner's convictions was obtained in violation of the carving doctrine. Since the judgment in each cause was entered on the same day, we will presume that the judgment in the lowest cause number was entered first. See, Ex Parte Calderon, Tex.Cr.App., 508 S.W.2d 360. The relief sought as to the conviction in Cause No. 10,171 in the 23rd Judicial District Court of Fort Bend County is granted. Petitioner's conviction for aggravated kidnapping is set aside.

The remainder of petitioner's contentions will be addressed only as they relate to his aggravated robbery conviction.

Petitioner next raises three contentions concerning his aggravated robbery indictment. He maintains that the indictment is defective because it fails to allege a culpable mental state and ownership. He further argues that the indictment is insufficient because it does not allege that the person robbed was the same person assaulted.

Petitioner's indictment for aggravated robbery alleges in pertinent part that he did then and there:

"unlawfully and intentionally take steal, exercise control over, and carry away from Mrs. J____ L____, hereinafter called owner, corporeal personal property, to wit, money, with intent to deprive said owner of said property and without the effective consent of said owner, and said defendant, in the course of committing said theft and with intent to take, steal, obtain, and maintain control of said property, did then and there intentionally and knowingly threaten and place the said owner in fear of imminent bodily injury and death by then and there using and exhibiting a deadly weapon, to wit, a firearm."

■■ The allegation that petitioner acted "intentionally" is sufficient to allege a culpable mental state under Sec. 6.02, supra. There is no requirement that a robbery indictment allege ownership. *Ex Parte Lucas*, Tex.Cr.App., 574 S.W.2d 162; *Servance v. State*, Tex.Cr.App., 537 S.W.2d 753. Lastly, the victim of the robbery and the victim of the underlying theft need not be the same person. See, *Watson v. State*, Tex.Cr.App., 532 S.W.2d 619.

We find that the indictment is sufficient to allege an offense under V.T.C.A. Penal Code, Sec. 29.03.

■■ In five related contentions, petitioner challenges the sufficiency of the evidence to support his aggravated robbery conviction. This Court has repeatedly held that a habeas corpus proceeding may not be used to collaterally attack the sufficiency of the evidence to support a conviction. See, *Ex Parte Dunn*, Tex.Cr.App., 571 S.W.2d 928; *Ex Parte Dantzler*, Tex.Cr.App., 571 S.W.2d 536. These contentions are without merit.[1]

■■ Petitioner next contends that his plea of guilty to aggravated robbery was involuntary because he was told that if he did not plead guilty, he would receive a life sentence. The record reflects that during the guilty plea proceeding, the trial court admonished petitioner pursuant to Art. 26.-13, V.A.C.C.P. The fact that petitioner entered a plea of guilty in order to avoid a greater punishment does not entitle him to habeas corpus relief. See, *Ex Parte Thomas*, 474 S.W.2d 238. This contention is without merit.

■■ Petitioner next complains of a one-on-one showup which was conducted shortly after his arrest. In *Fierro v. State*, Tex.Cr.App., 437 S.W.2d 833, it was held that a plea of guilty, if voluntarily and understandingly made, is conclusive as to the defendant's guilt and waives all non-jurisdictional defects. An error in a pretrial identification procedure does not constitute a jurisdictional defect. We find that petitioner's plea of guilty waived error, if any, in the showup conducted after his arrest.

Petitioner next contends that his plea of guilty was the result of ineffective assistance of counsel. Among other things, he maintains that his attorney coerced him into pleading guilty, refused to contact certain witnesses, and "offered no advice or legal representation."

■■ In a post-conviction habeas corpus action, the petitioner has the burden of

---

1. The record contains a judicial confession entered at the time petitioner entered his pleas of guilty. In the confession, petitioner admits to the truth of the allegations and facts contained in the indictments. The confession is sufficient evidence to support his guilty pleas. See, *Byron v. State*, Tex.Cr.App., 528 S.W.2d 224.

proof. *Ex Parte Sanders*, Tex.Cr.App., 588 S.W.2d 383. An allegation of ineffective counsel will be sustained only if it is firmly founded and the record affirmatively demonstrates counsel's alleged ineffectiveness. *Harrison v. State*, Tex.Cr.App., 552 S.W.2d 151.

██ The trial court held an evidentiary hearing in connection with petitioner's application. At that hearing, there was no evidence offered relative to the claim of ineffective assistance of counsel. In the absence of such evidence, petitioner has failed to discharge his burden of having the record affirmatively demonstrate the alleged ineffectiveness of counsel's representation. This contention is without merit.

Finally, petitioner attacks his aggravated robbery conviction on the basis that the trial court failed to conduct a hearing on his competency to stand trial. He maintains that there was sufficient evidence before the trial court in 1975 to raise a bona fide doubt as to his competence to stand trial and that a competency jury should have been impaneled.

██ In the instant case, the trial court was relieved of any responsibility to hold a pretrial hearing by virtue of petitioner's announcement of ready and entry of a guilty plea without any suggestion of incompetency. See, *Morales v. State*, Tex.Cr. App., 587 S.W.2d 418; *Thomas v. State*, Tex.Cr.App., 562 S.W.2d 240.

The record reflects that prior to accepting his pleas of guilty, petitioner informed the court that he had been confined in two mental institutions in the State of New York. From January until September of 1972, he was at the Mattewan State Hospital in Beacon, New York. With regard to this confinement, the record from the guilty plea reflects as follows:

"THE COURT: . . .

"All right, and during the time that you were in there, did you know that you were in that place?

"THE DEFENDANT: Not at the beginning.

"THE COURT: What did you have, a lick on your head or a crack-up or nervous breakdown, or what happened?

"THE DEFENDANT: I don't remember anything."

Petitioner was then transferred to the Utica State Hospital in Utica, New York. In describing his treatment and departure from this institution, petitioner stated as follows:

"THE COURT: And what did they do by way of treatment or consultation?

"THE DEFENDANT: Gave me medication and saw a doctor one time.

"THE COURT: Saw a doctor one time and gave you medication?

"THE DEFENDANT: Yes.

"THE COURT: Then they released you in about a week?

"THE DEFENDANT: I left.

"THE COURT: You escaped?

"THE DEFENDANT: Yes.

"THE COURT: Ran off?

"THE DEFENDANT: Yes."

The trial court then examined a report from Dr. Benjamin Sher dated May 24, 1975. Following a request from the district attorney, Dr. Sher examined petitioner in an effort to determine his competency to stand trial. As a result of this examination, Dr. Sher concluded that petitioner was competent to stand trial. A portion of the report stated, "Mr. McWilliams stated that he spent some time in the Mattewan Hospital in Beacon, New York. He stated that he was sent to the hospital by the court."

Petitioner's trial attorney then stated that in his opinion, petitioner was competent to stand trial. The court then accepted his guilty pleas.

Art. 46.02, Sec. 2(b), V.A.C.C.P. provides as follows:

"If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source, the court must conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial."

In *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the Supreme Court interpreted the due process clause to require that a criminal defendant be afforded an adequate hearing on competency to stand trial whenever the trial judge becomes aware of a bona fide doubt concerning that defendant's competence. In order to find a *Pate* violation, it must be shown that before or during trial, evidence of such incompetence was brought to the court's attention. See, *Ex Parte Hagans*, Tex.Cr. App., 558 S.W.2d 457.

In *Ex Parte Halford*, Tex.Cr.App., 536 S.W.2d 230, the Court found that the trial court should have conducted a competency hearing. In that case, the petitioner's mother testified that he had a long history of mental illness and irrational behavior following a head injury as a child. He was shown to have been previously committed to two mental institutions. Three doctors testified that although petitioner was a "sociopathic personality" he was nevertheless legally sane. The petitioner's trial attorney stated that petitioner's ability to communicate was "adequate." We found this evidence sufficient to raise a bona fide doubt as to competence. *Ex Parte Halford*, supra at 232.

Likewise, in *Ex Parte Long*, Tex.Cr.App., 564 S.W.2d 760, the petitioner maintained that the court should have conducted a competency hearing. In *Long*, several of the petitioner's relatives stated that his conduct was "strange and abnormal." Two friends described him as "insane." However, three doctors testified that the petitioner was of "sound mind" at the time of trial. We found the evidence sufficient to create a bona fide doubt as to competence and that the trial court should have conducted a separate hearing to determine the issue.

■ Previous admission to a mental hospital coupled with an explanation does not require a separate hearing to determine competency. *Cruz v. State*, Tex.Cr.App., 530 S.W.2d 817; *Bledsoe v. State*, Tex.Cr. App., 519 S.W.2d 646. In *Ainsworth v. State*, Tex.Cr.App., 493 S.W.2d 517, no error was found in the trial court refusing to impanel a competency jury although it was discovered mid-trial that the defendant was an escapee from Rusk State Hospital. It was found that an earlier diagnosis that the defendant was mentally ill meant little when contrasted with a present evaluation by his own counsel, the trial court and a psychiatrist on the question of present competency. *Ainsworth v. State*, supra at 522.

In the instant case, the only matters which could have raised the question of competency at the time of trial was information concerning petitioner's two prior commitments at mental institutions. When questioned as to the reason for his commitment, petitioner responded, "I don't remember anything." He was shown to have escaped from an institution approximately two and one-half years before the instant offenses. This evidence must be compared to Dr. Sher's examination conducted some two months before trial in which he concluded that petitioner was competent. Petitioner's testimony at the time of the guilty pleas was coherent and evidenced an understanding of the proceedings. Lastly, after observing the conduct and demeanor of petitioner at the time of trial, the court found him to be competent.

Petitioner relies extensively upon evidence introduced at the evidentiary hearing held in connection with this application to support his contention that a competency hearing should have been held at the time he pled guilty. The evidentiary hearing was held approximately four and one-half years after trial.

The record from the evidentiary hearing reveals four previous suicide attempts by petitioner. It was further shown that at the time petitioner was committed to Mattewan Hospital, he had been charged with multiple criminal offenses in New York and that the County Court of Schenectady County found that "as a result of mental disease or defect [he] (petitioner) lacks capacity to understand the proceedings against him or to assist in his own defense." There is no showing that this determination has ever been set aside. Upon his transfer to Utica Hospital, petitioner's diagnosis was

as follows: "psychotic depressive reaction; personality disorder; paranoid; and drug dependence." Following his escape from Utica, his condition was stated as "unimproved." Following his arrest for the instant offenses in Fort Bend County, petitioner was described as a "chronic schizophrenic." Lastly, in an affidavit dated January 17, 1980, Lucian Jones, a clinical psychologist, states that he examined petitioner on November 18, 1979. Jones states that upon the basis of this examination, he is of the opinion that petitioner was incompetent at the time he pled guilty in 1975.

There is no showing that any of the evidence from the evidentiary hearing was before the trial court at the time petitioner pled guilty. In the absence of such a showing, the matters before the court at the time of the guilty plea was insufficient to raise a bona fide doubt as to competency to stand trial. Under such circumstances, there was no error in the trial court failing sua sponte to conduct a competency hearing.[2]

The relief sought as to the conviction in Cause No. 10,169 in the 23rd Judicial District Court of Fort Bend County is denied. The relief sought as to the conviction in Cause No. 10,170 is granted and the indictment is ordered dismissed. The relief sought in Cause No. 10,171 is granted and the conviction is set aside and prosecution ordered dismissed.

It is so ordered.

DOUGLAS, Judge, dissenting.

The majority grants the relief in the aggravated rape case because of the omission in the indictment of a culpable mental state. The culpable mental states are that one intentionally, knowingly, recklessly or negligently commit the act constituting a crime. It is inconceivable that one can, by threats to take a life, compel a woman to submit to intercourse by recklessness or negligence. It is conceivable that one can threaten to inflict serious bodily injury or death to compel a woman to submit to intercourse without knowing it?

The indictment reads that petitioner did "... unlawfully, by force and threats, and without the consent of Mrs. J____ L____, ravish and have sexual intercourse with Mrs. J____ L____, a female not then and there the wife of the said Stephen McWilliams, and the said Stephen McWilliams did compel submission by Mrs. J____ L____ to said ravishment and sexual intercourse by threatening to inflict death and serious bodily injury to the said Mrs. J____ L____."

V.T.C.A., Penal Code, Section 21.02, sets forth the elements of rape:

"(a) A person commits an offense if he has sexual intercourse with a female not his wife without the female's consent.

"(b) The intercourse is without the female's consent under one or more of the following circumstances:

"(1) he compels her to submit or participate by force that overcomes such earnest resistance as might reasonably be expected under the circumstances;

"(2) he compels her to submit or participate by any threat, communicated by actions, words, or deeds, that would prevent resistance by a woman of ordinary resolution, under the same or similar circumstances, because of a reasonable fear of harm; ..."

V.T.C.A., Penal Code, Section 21.03, sets forth the aggravating circumstances of rape:

"(a) A person commits an offense if he commits rape as defined in Section 21.02 of this code or rape of a child as defined in Section 21.09 of this code and he:

"* * *

"(2) compels submission to the rape by threat of death, serious bodily injury, or kidnapping to be imminently inflicted on anyone."

2. Petitioner does not contend that he was in fact incompetent at the time of trial. Rather, his contention solely centers around the failure to provide a competency hearing. Cf. *Zapata v. Estelle*, 588 F.2d 1017 (5th Cir. 1979); *Nathaniel v. Estelle*, 493 F.2d 794 (5th Cir. 1974).

In *Childs v. State*, 547 S.W.2d 613 (Tex.Cr. App.1977), the defendant contended that the indictment failed to allege to whom the threat of death was communicated and was, thus, fundamentally defective. We held that a "logical deduction arising from a reasonable reading of the entire indictment is that the prosecutrix submitted to appellant's act because he threatened her with the imminent infliction of death." 547 S.W.2d at 615.

In *Clark v. State*, 527 S.W.2d 292 (Tex.Cr. App.1975), we held that the indictment, read as a whole, was sufficient to apprise the defendant of the offense under the statute. See also *Banks v. State*, 530 S.W.2d 940 (Tex.Cr.App.1976).

Article 21.17, V.A.C.C.P., provides:

"Words used in a statute to define an offense need not be strictly pursued in the indictment; it is sufficient to use other words conveying the same meaning, or which include the sense of the statutory words."

When the indictment in the present case is read as a whole, it is clear that McWilliams is charged with aggravated rape. It is incomprehensible that someone can threaten to inflict death and serious bodily injury on another and by force and threats have sexual intercourse with the complainant and not know about it or intend to do it. We should look at the indictment, absent a motion to quash, only to see if it sufficiently charges an offense against the State.

The majority grants relief in the aggravated kidnapping conviction. The relief should not be granted in aggravated robbery convictions for the reasons set forth in the dissenting opinion in *Orosco v. State*, 590 S.W.2d 121 (Tex.Cr.App.1980).

## OPINION ON STATE'S MOTION FOR REHEARING

DALLY, Judge.

The petitioner in this post-conviction habeas corpus proceeding, Art. 11.07, V.A.C.C.P., seeks relief under the carving doctrine. We now abandon the carving doctrine for the compelling reason that it encourages crime. When the carving doctrine may be applied to a situation in which a defendant robs, kidnaps, rapes, and murders his victim, the defendant suffers no more punishment than he would had he committed only one of the crimes. Justice and reason demand prosecution for each of the separate offenses so that a robber will be deterred from kidnapping, raping, and murdering the victim.

The petitioner was convicted of the offenses of aggravated kidnapping, V.T.C.A. Penal Code, Sec. 20.04, aggravated robbery, V.T.C.A. Penal Code, Sec. 29.03, and aggravated rape, V.T.C.A. Penal Code, Sec. 21.03. These offenses were committed in the same criminal episode or transaction.

On original submission, the conviction for aggravated rape was vacated and the indictment ordered dismissed because the indictment was found to be fundamentally defective. We will give no further consideration to that matter which was correctly decided on original submission. The conviction for aggravated robbery was upheld, but the conviction for aggravated kidnapping was vacated and the indictment was ordered dismissed because the conviction for kidnapping violated the carving doctrine. We have now re-examined the doctrine of carving and have concluded that it should be abandoned. Although many opinions of this Court have stated that the carving doctrine is mandated by the Double Jeopardy Clauses of the Constitution of the United States and the Constitution of this State, these opinions are incorrect; the doctrine of carving is not mandated by the Double Jeopardy Clauses.

The dissenters agree that the doctrine of carving is not based in any constitutional or statutory provision; it is based only on tradition—it seemed unfair to prosecute a bailee for stealing both the horse and the saddle. *Quitzow v. State*, 1 Tex.App. 47 (Ct.App.1976). The dissenters urge that a prosecutor should be allowed only to take his "best shot" and obtain one conviction when a defendant robs, kidnaps, rapes, and murders his victim. However, since the carving doctrine is not supported by consti-

tutional or statutory provisions, and since this tradition, the doctrine of carving, has now proved unsound, it should be abandoned.

There is no definitive statement of the carving doctrine; it is a nebulous rule applied only in this jurisdiction. Initially, carving was applied when the two offenses charged contained common material elements or when the two offenses required the same evidence to convict. *Herera v. State*, 35 Tex.Cr.R. 607, 34 S.W. 943 (1896). This Court added the "continuous act or transaction" test in *Paschal v. State*, 49 Tex.Cr.R. 111, 90 S.W. 878 (1905). Since that time the "same evidence" and the "continuous assaultive transaction" tests have been randomly applied. In *Duckett v. State*, 454 S.W.2d 755 (Tex.Cr.App.1970) defendant's robbery conviction was held to be in violation of the carving doctrine because the same evidence was used to support both that conviction and defendant's conviction of assault with intent to murder. Then, in *Douthit v. State*, 482 S.W.2d 155 (Tex.Cr. App.1972) the court used the continuous assaultive transaction test to determine whether defendant's two prosecutions for rape (of the same victim) were in violation of the carving doctrine. The court held that the various acts of intercourse, although all part of a continuous assaultive transaction, were sufficiently separated by time and place so that they were not part of a single transaction for carving purposes. The court returned to the "same evidence" test in *Robinson v. State*, 530 S.W.2d 592 (Tex.Cr.App.1975) to uphold defendant's convictions of criminal trespass and misdemeanor theft. Significantly, under a "same transaction" analysis, the carving doctrine would have disallowed the second conviction since the theft was committed upon defendant's trespass onto the University of Houston campus.

That different decisions can be supported by these two theories indicates the lack of precedential value of the carving doctrine

decisions. In some cases this Court cites both the *Herera* "same evidence test" and the *Paschal* "continuous assaultive transaction" test. See *Duckett v. State*, supra, and *Hawkins v. State*, 535 S.W.2d 359 (Tex.Cr. App.1976). Neither of these two tests is without scholarly criticism. See Steele, A Review of the Jeopardy Defense in Texas, 16 Texas Tech.Law Review, 393 (1981); Kirchheimer, The Act, the Offense, and Double Jeopardy, 58 Yale L.J. 503 (1949); Twice in Jeopardy, 75 Yale L.J. 262 (1965).

Neither the Federal nor State Constitutions nor Texas statutes prohibit multiple prosecution for two statutory offenses committed in the same transaction. The constitutional provisions speak of double jeopardy in terms of the "same offense" rather than "same transaction." The Supreme Court of the United States in *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978) stated that the power to define offenses lies in the legislature:

> "[O]nce Congress has defined a statutory offense by its prescription of the 'allowable unit of prosecution' that prescription determines the scope of protection afforded by a prior conviction or acquittal."

This deference which the Supreme Court has shown to the United States Congress should also be shown by this Court to the Texas Legislature. Not only has the legislature clearly defined and separated criminal offenses; it has also made known, directly and indirectly, its intent insofar as multiple prosecutions are concerned. In Chapter 3 of the Texas Penal Code (1974) multiple prosecutions of property offenses are considered. It appears the legislature intended to exclude other offenses from this provision, and to allow prosecutions for each offense occurring within one criminal transaction.[1] Prosecutions for each offense, other than property offenses occurring in one criminal transaction are to be prohibited only when in violation of the double jeopardy clauses of the Federal and State Constitutions.

---

1. Compare Chapter 3, Multiple Prosecutions and Double Jeopardy, Texas Penal Code, A Proposed Revision, State Bar Committee on

Revision of the Penal Code, Final Draft (October 1970) with Chapter 3, Multiple Prosecutions, V.T.C.A. Penal Code (1974).

The difficulties involved in the application of the carving doctrine are numerous. Any sequence of conduct can be labelled a "transaction" and this Court has construed the term in an inconsistent manner. Many cases decided under the carving doctrine are in conflict. In one case the court upheld defendant's three convictions of sodomy with the same person on the same occasion, *Lee v. State*, 505 S.W.2d 816 (Tex.Cr.App. 1974); in another case the court reversed two of defendant's three convictions for indecent exposure, fondling, and statutory rape, also involving the same person on one occasion. *Ex parte Calderon*, 508 S.W.2d 360 (Tex.Cr.App.1974). The court reasoned that in the first case each offense was separate, but in the second case, it held that even though the offenses are separate under the law, they nonetheless were a single transaction because they were proved by the same acts. Id. Successive prosecutions for aggravated robbery and aggravated rape on one victim on one occasion have been found contrary to the carving doctrine, yet successive prosecutions for rape and sodomy of one victim on the same occasion have been held permissible. See *Orosco v. State*, 590 S.W.2d 121 (Tex.Cr. App.1978) and *Ex parte Joseph*, 558 S.W.2d 891 (Tex.Cr.App.1977). The doctrine of carving is unsound and its application has been erratic.

The doctrine of carving was court made; constitutions and statutes make no provision for such a doctrine. Since we are abandoning the carving doctrine, we will now decide double jeopardy questions under the strict construction of the Constitutions of the United States and of this State. The prohibitions against being twice put in jeopardy for the same offense requires a test for defining the "same offense." The Supreme Court of the United States has provided such a test:

> "[T]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions the test to be applied to determine whether there are two offenses or only

one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). The *Blockburger* test is satisfied if each statutory offense requires the proof of a fact that the other does not. At trial there may be a substantial overlap in the proof of each offense; however, it is the *separate statutory elements* of each offense which must be examined under this test. *Brown v. Alabama*, 619 F.2d 376 (5th Cir. 1980).

The *Blockburger* rule will not preclude two convictions here; each statute requires proof of a fact which the other does not. See V.T.C.A. Penal Code, Secs. 20.04 (Aggravated Kidnapping) and 29.03 (Aggravated Robbery).

Opinions of the Supreme Court after *Blockburger* have dealt with other double jeopardy matters. See *Brown v. Ohio*, supra; *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); *Illinois v. Vitale*, supra; *Whalen v. United States*, supra, but the matters considered in those cases are not matters pertinent to the decision in this case.

Since there is no double jeopardy violation in the convictions for aggravated kidnapping and aggravated robbery, the State's Motion for Rehearing is granted; the relief sought will be denied.

It is so ordered.

ROBERTS, Judge, dissenting.

A statute requires that, "The Court of Criminal Appeals, in each case decided by it, either on appeal or on review, shall deliver a written opinion setting forth the reasons for such decision. . . ." V.A.C.C.P., Article 44.24(d). Although this case is not on appeal or on review, it may be "heard as . . . an appeal,"[1] and the court seems to have chosen so to hear it, for the court has deliv-

---

1. V.A.C.C.P., Art. 11.07, Sec. 3.

ered a written opinion setting forth six reasons for its decision. It might as well have refrained from doing so, for none of the reasons can justify its decision to discard the carving doctrine.

The court's first "compelling reason" is deterrence. It says that, under the carving doctrine, "a defendant [who] robs, kidnaps, rapes, and murders his victim ... suffers no more punishment than he would had he committed only one of the crimes. Justice and reason demand prosecution for each of the separate offenses," to deter such episodes. This seems to be more a rhetorical flourish than a compelling reason. A person who robbed, kidnapped, raped, and murdered his victim could be punished by death, regardless of the carving doctrine;[2] it is not clear, even in the lights of justice and reason, that the prospect of an additional term of imprisonment would be a marginally greater deterrent than the prospect of death.

Even if murder is removed from the court's list of horrible hypotheticals each of the remaining offenses is punishable by confinement for life.[3] It is unlikely that many robbers who are not deterred by the prospect of one life sentence will be deterred from abducting their victims by the prospect of two life sentences; it seems more likely that robbers expect not to be caught at all. If Texas had shorter, determinate sentences, it might make sense to say that multiple punishments are needed to reflect the seriousness of a criminal episode that comprised multiple offenses. But Texas' law provides a very wide range of punishment, with a very high maximum, for each felony. Therefore, the sentencer is allowed to take into account all the aggravating circumstances of the criminal episode, and to set punishment at the high end of the scale for a single offense.[4]

Not only are multiple punishments unneeded in most cases, they are unlikely to be imposed frequently. If the court's hypo-

thetical defendant is indicted for robbery, kidnapping, and rape, he may insist on separate trials. After obtaining a conviction and a long sentence for one offense in an episode, a prosecutor will not often choose to expend his (and the court's and the witnesses') time and money in a sequence of prosecutions for the other offenses in the episode. The court's first, "compelling" reason cannot withstand scrutiny.

The court's second reason is that "the doctrine of carving is not mandated by the Double Jeopardy Clauses." This is only half true. The court is correct in holding that the United States Constitution does not require the carving doctrine, but it is wrong about the Texas Constitution.

The Supreme Court has not held explicitly that the Fifth Amendment does not require the carving, or "same transaction," test, but it has rejected opportunities to adopt the test so often that the point is sufficiently clear. See, e.g., Brown v. Ohio, 432 U.S. 161, 170, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977) (Brennan, J., concurring); Thompson v. Oklahoma, 429 U.S. 1053, 97 S.Ct. 768, 50 L.Ed.2d 770 (1977) (Brennan, J., dissenting to denial of certiorari) (collecting ten other denials of certiorari); Harris v. Washington, 404 U.S. 55, 57, 92 S.Ct. 183, 184, 30 L.Ed.2d 212 (1971) (statement of Douglas, Brennan, and Marshall, JJ.); Ashe v. Swenson, 397 U.S. 436, 448, 90 S.Ct. 1189, 1196, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring); Abbate v. United States, 359 U.S. 187, 196, 79 S.Ct. 666, 671, 3 L.Ed.2d 729 (1959) (separate opinion of Brennan, J.); Hoag v. New Jersey, 356 U.S. 464, 477, 78 S.Ct. 829, 837, 2 L.Ed.2d 913 (1958) (Douglas, J., dissenting). See also Pennsylvania v. Campana, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973) (vacating state court judgments in which plurality had held that Fifth Amendment required "same transaction rule," and remanding for consideration of whether judgments were

---

2. V.T.C.A., Penal Code, Sec. 19.03(a)(2).

3. V.T.C.A., Penal Code, Secs. 20.04(b) (aggravated kidnapping), 21.03(c) (aggravated rape), and 29.03(b) (aggravated robbery).

4. This same purpose underlies V.T.C.A., Penal Code, Sec. 12.45 ("Admission of Unadjudicated Offense").

based on state or federal constitutions, or both).[5] Recent holdings of this court that a violation of the carving doctrine is a violation of the Fifth and Fourteenth Amendments, are wrong.

States may give greater protections to individual rights than the minimums required by the Fourteenth Amendment, however. *Cooper v. California*, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967). It long has been held that the double jeopardy provision in the Texas Bill of Rights [6] does just that.

In *Hirshfield v. State*, 11 Tex.App. 207, 214 (1881), the court considered the question, "What is meant by the term 'same offense' [in the Texas Double Jeopardy Clause]?" After discussing the doctrines of former acquittal and former conviction, the court pointed out that "it must be borne in mind that there is another principle applicable to this subject of jeopardy, which is quite distinct from that which obtains in pleas of former conviction or acquittal generally. This is the doctrine of carving. . . ." *Id.* at 215. Carving has had a constitutional basis for a century. The court is simply wrong in saying that it was "initially" applied in 1896 and that it is "not supported by . . . constitutional provisions." The court is correct in recognizing that carving is not a federal doctrine, but it is only pretending that carving is a mere "tradition" which is not rooted in the Texas Constitution.

The court's third reason for rejecting carving is that it is a "rule applied only in this jurisdiction." This, too, is wrong insofar as it implies that no other jurisdiction uses a "same transaction" rule. As of 1965, at least five states used such a rule,[7] and at least one other state has adopted such a rule since.[8] Exhaustive research might discover others.

The court's fourth reason for its decision is that the carving doctrine has been stated and applied inconsistently. This is undeniably true (although not all of the court's examples actually show inconsistency).[9] But this reason can justify only a reform of the doctrine so that it will be stated and applied more consistently. Judge Clinton's opinion, below, discusses this at length, so I shall pass on to the court's fifth reason: legislative intent.

The court claims (in footnote 1 and the accompanying text) that the legislative rejection of a proposal to reform the carving doctrine in Chapter 3 of the proposed penal code indicates an intent to abolish that doctrine. The logic is not apparent. One would suppose that a legislative rejection of a reform would indicate the opposite: the Legislature's unwillingness to change this well established rule of law.

The court's sixth reason is strict constructionism. The court points out that "the constitutional provisions speak of double jeopardy in terms of the 'same offense' rather than 'same transaction,'" and concludes, "The doctrine of carving was court made; constitutions and statutes make no provision for such a doctrine. . . . [W]e will now decide double jeopardy questions under the strict construction of the Constitutions of the United States and of this State"; that is, by the *Blockburger* rule.

Close inspection of the double jeopardy clauses will not reveal the *Blockburger* rule any more than it reveals the carving rule. The one is exactly as "court made" as the

---

**5.** On remand the plurality abandoned its Fifth Amendment holdings and the court adopted the "same transaction" rule as state law. *Commonwealth v. Campana*, 455 Pa. 622, 314 A.2d 854 (1974).

**6.** Tex.Const., Art. 1, Sec. 14.

**7.** 75 Yale L. J. 262, 270 n. 34 (1965) (Alabama, Georgia, New Jersey, Oklahoma and Texas).

**8.** See n. 5, supra.

**9.** As an example of carving cases that are in conflict, the court cites *Lee v. State*, 505 S.W.2d 816 (Tex.Cr.App.1974), comparing it with *Ex parte Calderon*, 508 S.W.2d 360 (Tex. Cr.App.1974). A close reading of the *Lee* opinion reveals that the carving doctrine was not applied at all; the case seems to have been disposed of on federal, *Blockburger*—style analysis. *Lee* does not illustrate inconsistent application of carving. It may illustrate, instead, a confusing of carving with *Blockburger*.

other. The role of this court is to fashion such rules so that the broad commands of the constitution can have specific applications. How can one strictly construe terms such as "due process," "equal protection," or "unreasonable searches and seizures"? As a legal historian has said, "Strict constructionism can be a balm for the judicial conscience, but not much more. The imprecision of the constitutional text makes strict constructionism a faintly ridiculous usage.... It is a form of judicial laissez-faireism by which the judge ... defers to other branches of government,[10] or to the states, or to law-enforcement agencies, as the case may be." L. Levy, *Against the Law*, 30–31 (1974).

Section 14 of the Texas Bill of Rights says, "No person, for the same offense, shall be twice put in jeopardy of life or liberty...." Like the corresponding clause in the Fifth Amendment, it contains "deceptively plain language [which] has given rise to problems both subtle and complex...." *Crist v. Bretz*, 437 U.S. 28, 32, 98 S.Ct. 2156, 2159, 57 L.Ed.2d 24 (1978). The carving doctrine is a solution to the problems of deciding when a person may be subjected to multiple trials or punishments for closely related acts; the *Blockburger* test is part of a different approach to one of these problems. The suggestion that one is based on a stricter construction of the constitutions than the other is false; there cannot be a strict construction of the constitutional term, "same offense."

It is worth repeating that the *Blockburger* test, adopted today, is not a substitute for the carving doctrine. To begin with, *Blockburger* will not resolve the question of whether multiple trials may be had (as distinguished from multiple punishments which are imposed in only one trial). *Brown v. Ohio*, 432 U.S. 161, 166 n. 6, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977).

Even in the area of multiple punishments *Blockburger* is not the tool of mechanical and consistent adjudication for which the court seems to yearn.

"[The] assumption that *Blockburger* defines the scope of the double jeopardy clause misconceives the purpose and nature of that rule: *Blockburger* is not a constitutional 'litmus test' for determining whether a particular sentence violates the double jeopardy clause. Rather as the Supreme Court made clear in *Whalen* [*v. United States*, 445 U.S. 684 [100 S.Ct. 1432, 63 L.Ed.2d 715] (1980)], *Blockburger* is 'a rule of statutory construction ... relied on ... to determine whether Congress has in a given situation provided that two statutory offenses may be punished cumulatively.' 445 U.S. at 691 [100 S.Ct. at 1438] (footnote omitted). * * * [T]he essential inquiry is Congress' intent. See 445 U.S. at 687, 100 S.Ct. at 1436." *United States v. Hawkins*, 658 F.2d 279, 287 (5th Cir. 1981).

The Texas Legislature's intent is much harder to find than Congress's, for the sources have been nearly non-existent,[11] and are obscure even today.[12]

It is worth mentioning, too, that the court is creating a collision between the *Blockburger* analysis and its own analysis of lesser included offenses. As the court holds today, *Blockburger* regards as irrelevant the fact that "[a]t trial there may be a substantial overlap in the proof of each offense; ... it is the *separate statutory elements* of each offense which must be examined under this test." This court's analysis of lesser included offenses is the opposite; at least part of the time, on the facts of the case, an offense was a lesser included offense even though its elements were not strictly encompassed by the offense alleged. *See, e.g., Christiansen v. State*, 575 S.W.2d 42, 44 (Tex.Cr.App.1979)

---

10. Compare the court's opinion, ante: "The deference which the Supreme Court has shown to the United States Congress should also be shown by this Court to the Texas Legislature."

11. *Gillette v. State*, 588 S.W.2d 361, 364, 368 (Tex.Cr.App.1979) (Roberts, J., dissenting).

12. *See Ex parte Byers*, 612 S.W.2d 534, 536 (Tex.Cr.App.1980), which was based on four untranscribed tape recordings.

(under some circumstances, issuance of a bad check may be a lesser included offense of theft); *Hazel v. State*, 534 S.W.2d 698, 700–701 (Tex.Cr.App.1976) (unlawful carrying of weapon is lesser included offense of unlawful possession of firearm by felon, even though former offense requires proof of "carrying," which latter offense does not).[13] Until these holdings are reconciled, the law will be that, even though an offense is a lesser included offense of another under state law, a person may be convicted and punished for both under *Blockburger.* This will be constitutionally interesting.

The court discards an accepted doctrine for no good reason, in exchange for a doctrine that will involve more difficulties than it now admits. I am not convinced that the grass is greener on the *Blockburger* side of the fence. I dissent.

ONION, P. J., and TEAGUE, J., join in this opinion.

CLINTON, Judge, dissenting.

Application of the carving doctrine by Texas courts for more than one hundred and five years now has provided a significant protection against the citizen being twice placed in jeopardy. Its brutal dispatch by a majority of my Brothers "got the blood of controversy in my neck,"[1] and I must dissent.

In 1876 the Supreme Court of Texas found in *Wilson v. State*, 45 Tex. 76 (1876) that "the great weight of American authorities" supported the conclusion it was to reach. Included was an Indiana decision, *Jackson v. The State*, 14 Ind.R. 327, from which the Texas Supreme Court extracted the following:

"The State cannot split up one crime and prosecute it in parts. A prosecution for any part of a single crime bars any further prosecution based upon the whole or part of the same crime." *Wilson*, supra, at 83.

In conclusion:

"[When] the transaction is the same [it] is but one offense against the State, and . . . the accused cannot be convicted on separate indictments charging different parts of one transaction as a distinct offense. A conviction on one of the indictments bars a prosecution on the other." *Ibid.*

Also in 1876 the other appellate court in Texas decided *Quitzow v. State*, 1 Tex.App. 47 (Ct.App.1876), and so far as can be ascertained the first shorthand rendition of the carving doctrine appeared in the opinion of the Court written by Presiding Judge White:

"The prosecutor had a right to carve as large an offense out of this transaction as he could, but *yet must cut only once.*" *Id.*, at 53–54.[2]

---

**13.** These cases derive from *Day v. State*, 532 S.W.2d 302, 315–316 (Tex.Cr.App.1976), in which the court construed V.A.C.C.P., Art. 37.-09(1): "An offense is a lesser included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged . . . ." The dictum in *Day* that the statute "defines lesser included offense in terms of the facts of the case" has been misinterpreted to mean the *evidence* in the case. Under this misinterpretation, the offense of unlawfully carrying a weapon could be a lesser included offense of murder if the evidence showed that the alleged murderer was carrying a weapon. The correct construction of *Day* (and of the statute) is that the term "facts" refers to "factual elements." By this construction, the lesser included offenses in a case can be determined from the four corners of the indictment, which alleges the "facts *required* to establish the commission of the offense," as distinguished from mere matters of evidence.

**1.** Justice Oliver Wendell Holmes, in a letter to Laski, once explained that the matter of salaries of judges being included in the income tax did not interest him particularly, he was not "at all in love with what I had written" in dissent and had not "got the blood of controversy in my neck." 1 Holmes-Laski Letters 68 (Howe ed. 1953) at 266. One other occasion Holmes had not intended to write in dissent "when the opinion came and stirred my fighting blood." *Id.*, at 560. "Here," applauds one commentator, "is the stuff dissents are made of." Schaefer, *Precedent and Policy*, 34 U.Chi.L.Rev. 3 (1966), reprinted by permission in Aldisert, *The Judicial Process* (West Publishing Co. 1976) 802, 804.

**2.** A year before the Supreme Court of Texas had noted in passing, "It is a general rule that a party may in a criminal proceeding be held to answer for *any offense*, great or small, which can be legally *carved out of the transaction*,"

The "transaction" was Quitzow's hiring from a livery stable a horse and, at the same time, a saddle and bridle and not returning them when agreed. Applying the carving doctrine, the Court held that conviction of theft of the horse precluded trial and conviction for theft of saddle and bridle. The Court relied on and discussed *Wilson v. State*, supra, and several other authorities.

In *Simco v. State*, 9 Tex.App. 338 (Ct. App.1880) Presiding Judge White, for the Court, opined why once a defendant, who stole three horses simultaneously, each belonging to a different owner, was convicted of theft of any one of them, he could not thereafter be convicted of theft of the other horses,

> "Because the transaction—the taking of the three horses at the same time—would constitute but one offense in law (*Wilson v. The State*, 45 Texas 76); and the plea [of former conviction] would be good upon the strength of, and by virtue of another rule, *well settled in criminal practice*, which allows the prosecutor to carve as large an offense out of a single transaction as he can, yet he must cut only once. *Quitzow v. The State*, 1 Texas Ct.App. 47. Here is where the doctrine of carving would come in and support the plea. [Referring to Wharton Criminal Law and 'authorities cited in the note.']"
> *Id.*, at 349.

The following year Judge Hurt wrote for the Court in *Hirshfield v. State*, 11 Tex. App. 207 (Ct.App.1881). Upon an indictment alleging all the elements constituting the offense of uttering a forged instrument followed by other allegations of swindling Hirshfield was convicted of swindling. Then in effect was a provision of the panel code that precluded the offense of swindling from taking a case of theft or some other proscribed offense "out of the operation of law which defines such other of-

fense," and on this ground Hirshfield had excepted to the indictment, contending he could not, therefore, be prosecuted for swindling. The contention was rejected by the trial court and the jury was instructed that the trial was for the offense of swindling. The Court held the exceptions should have been sustained, reversed the judgment and dismissed the prosecution.

In the opinion of the Court Judge Hurt examined the meaning of Article I, § 14, the jeopardy clause in the Constitution of the State of Texas and concluded that "a person shall not be twice put in jeopardy for the same act, acts, or omission, which are forbidden by positive law, and to which is annexed, on conviction, any punishment prescribed in this Code." It followed, therefore, that "a conviction for swindling which rests upon and is supported alone by the act of passing as true the instrument set forth in this indictment is a full and complete satisfaction of the law which forbids, and upon conviction prescribes, a punishment for said act." But though the same act of passing as true a forged instrument "enters into and constitutes the vital elements of, at least, two offenses, to wit, swindling and knowingly uttering a forged instrument as true," a conviction for that act "would be a complete satisfaction of the violated law." As a general proposition it was correct that as an accused "could not have been convicted under the indictment for swindling of the offense of knowingly passing as true a forged instrument, therefore he cannot plead this conviction for swindling to a prosecution for uttering a forged instrument," still

> "[I]t must be borne in mind that there is another principle applicable to this subject of jeopardy, which is quite distinct from that which obtains in pleas of former conviction or acquittal generally. This is the doctrine of carving, and is explicitly recognized and effectively applied in a number of cases by our Su-

citing Bishop on Criminal Law. *Jackson v. State*, 43 Tex. 421, 423 (1875). (All emphasis is

mine unless otherwise indicated.)

preme Court and Court of Appeals. [Citing them and others]."[3]  *Id.*, at 215.

Presiding Judge White reiterated the doctrine in *Wright v. State*, 17 Tex.App. 152 (Ct.App.1884), a case where the accused had been acquitted of stealing cattle of Houston and then put to trial and convicted of theft of cattle of Floyd at the same time. The Court held that a plea of former acquittal was not good, but demonstrated that if the case had been one of former *conviction* a plea of former conviction would have been sustained because:

"... the transaction being but one, the prosecution could carve but once, and having once carved and convicted it could not claim another and second conviction against the same party for the single offense. It is the doctrine of carving, a well established principle of criminal law, which makes this distinction between the pleas of *autrefois acquit* and *autrefois convict* where several ostensible crimes are covered by a single transaction. But for this doctrine of carving, [the] plea of former conviction would not be maintainable in law."

Reference is made to his earlier opinion in *Simco*; then the Presiding Judge further explains that had Wright been first *convicted* of taking Houston's cattle,

"the State had carved already and obtained his conviction for the same offense, and in law that is a satisfaction of the entire offense so far as he is concerned."

*Wilson v. State*, supra, is then relied upon. *Id.*, at 159.

Appellate jurisdiction in criminal cases was transferred and vested in the Court of Criminal Appeals by constitutional amendment adopted in 1891 that became Article V, § 5. Through Judge Davidson, who had moved over from the Court of Appeals,[4] the Court would soon state, "If the same violence and assault were relied upon in both cases to sustain the conviction, then the plea [of former conviction] was well

grounded; or, if it was one continuous transaction, in which appellant perpetrated the robbery by the assault, the prosecution could come but once," *Moore v. State*, 33 Tex.Cr.R. 166, 25 S.W. 1120 (1894). In *Herera v. State*, cited and discussed in the majority opinion, the Court explained the carving doctrine in more expansive terms, *viz*:

"[W]hen one transaction is presented to the government, which may include distinct criminal offenses, the government can carve but once. It can take the greater, and prosecute for that; or it can take the lesser offense, and prosecute for that; and a prosecution and conviction for either will equally be a bar to another subsequent prosecution for the other offense, which involved the same transaction." *Id.*, 34 S.W. at 944.

Finally, for my present purposes, in *Sadberry v. State*, 39 Tex.Cr.R. 466, 46 S.W. 639 (1898), the Court was confronted with an unusual fact situation implicating the carving doctrine. Sadberry, "on account of some indignities heaped upon him during the day by some fishermen," approached their camp at night while the four of them were seated around a campfire playing cards. From his gun loaded with No. 5 shot and slugs, Sadberry fired one shot that wounded all four campers. He was later tried and convicted of shooting one of them with intent to murder, and when then placed on trial for assaulting the brother of the first with intent to murder pleaded former conviction. That plea, the Court found, was well taken and should have been sustained. For the Court Judge Davidson pithily wrote:

"The state had carved its case, and had secured a conviction, and, having done so, under the state of the case disclosed by the record, it was not entitled to further prosecution. See *Simco v. State*, 9 Tex. App. 338; *Wright v. State*, 17 Tex.App. 152. The doctrine laid down in the two

---

3.  *Quitzow v. State*, supra; *Wilson v. State*, supra; *State v. Damon*, 2 Tyler 387; *State v. Williams*, 29 Tenn. 101, 10 Humph. 101; *Lumpkin v. State*, 14 Ind. 327; *State v. Nelson*, 29 Me. 329; *Ben v. State*, 22 Ala. 9, *Rex v. Benford*, Barr, 980; *Clem v. State*, 42 Ind. 420.

4.  . 19–20 S.W. (iii).

cases is the well-settled rule in Texas, and it is not necessary to cite other authorities."

What had been demonstrated thus far, then, is that over the course of some twenty years the Supreme Court of Texas, the Court of Appeals and the Court of Criminal Appeals, each in its own time, found, understood, applied and explained the carving doctrine to the bench and the bar—all without disagreement serious enough to provoke a dissenting point of view. Such a firmly grounded doctrine of law ought not be jettisoned because latter day judicial writings are seen by some to make an "erratic" application of it.

Even less attractive is the notion that the doctrine is somehow inherently suspect because it is a judicial creation which, it is said by the majority, finds no "mandate" in jeopardy provisions of our constitutions. The whole body of common law was made and modified for centuries without constitutional dictates.[5] The great jurists who wrote for their respective courts in this State before the turn of the century never pretended the carving doctrine was constitutionally prescribed in precise words and terms, but they did find that it provided a bar against a citizen's being again put in jeopardy for another offense shown by plea of former conviction to have been committed in the same transaction covering the first offense, *Wilson v. State, Simco v. State, Hirshfield v. State, Herera v. State* and *Sadberry v. State*, all supra, and that the doctrine was so well established in the criminal law that it should be applied, and they uniformly insisted that the carving doctrine be followed by the prosecutors and trial courts of the State.

Moreover, during the one hundred and five years the doctrine has been at work in Texas the code of criminal procedure and the penal code have four times simultaneously been revised—1879, 1895, 1911 and 1925—and once in its own time: the code of criminal procedure in 1965 and the penal code in 1973. Never has the Legislature of this State, whose members are presumed by law to know the doctrine[6] and surely possess the power and authority to do so, repealed, amended, altered or modified the doctrine. On the contrary, it is a matter of record that the Legislature only recently rejected a proposal to do that.

Chapter 3 in the proposed revision of the penal code as originally introduced and reported out by committee broadly defined "criminal episode" to embrace all offenses produced by the same criminal conduct as well as all offenses aimed at accomplishment of a single criminal objective, and for the first time would have

> "codified all the law in this area; substituted a single precisely-worded definition of criminal episode for the five different definitions of 'transaction' identified in the case law; and incorporated recent U.S. Supreme Court decisions changing the Texas law in this area."

That undertaking has been acknowledged as "ambitious" by Searcy and Patterson, "cutting across as it had to both substantive penal law and criminal procedure." The proposal was rejected by adoption of a floor amendment which corrupted the concept and reduced its application to "the repeated commission of any one offense defined in Title 7 of the code [Offenses Against Property]."[7] The pair of consultants and observers have "no doubt its scope and the several radical changes it would have effected in Texas law contributed to its rejection." Practice Commentary following V.T. C.A. Penal Code, § 3.01.

Putting this record of what the Legislature cut out of the proposed Chapter 3 in

---

5. "The common law consists not only of judicial precedents (opinions in decided cases) but of principles, standards, doctrines, and traditions. * * * Our common law started in the Middle Ages, from practically nothing." Leflar, Sources of Judge-Made Law, 24 Okla.L. Rev. 319 (1971), quoted by Aldisert, op. cit. supra, at 92–93.

6. *Reynolds v. State*, 547 S.W.2d 590, 592 (Tex. Cr.App.1977); *Townsend v. State*, 427 S.W.2d 55, 62 (Tex.Cr.App.1968).

7. As thus defined, "criminal episode" does not implicate the carving doctrine at all.

the light of its presumed knowledge of the longstanding carving doctrine, we are "entitled to assume that the legislature, through its inaction, indicated its approval" of the doctrine, *Allen Sales & Servicenter, Inc. v. Ryan*, 525 S.W.2d 863, 866 (Tex.1975); see also *Republic Ins. Co. v. Poole*, 257 S.W. 624, 625 [8] (Tex.Civ.App.1923—San Antonio, writ ref'd.).

Therefore, though the carving doctrine be a judicial creation, still legislative approval and sanction of the doctrine just eight years ago—the last time—may be strongly inferred.

In spite of what is so obvious in this respect, the majority somehow gleans from rejection of proposed Chapter 3 and enactment of the four sections that have nothing to do with the carving doctrine that the Legislature "appears" to have intended "to allow prosecutions for each offense occurring within one criminal transaction." But the law is that a change in the status quo of a doctrine is not to be inferred unless the legislative body has unmistakably indicated a contrary wish. *Bush v. Oceans International*, 621 F.2d 207, 211, n. 5 (CA 5 1980). Since the Legislature did not tinker with the carving doctrine at all, there is no indication of any desire to abolish it, much less an unmistakable one.

That the power to define offenses lies in the Legislature is rudimentary, and undoubtedly once it has defined a statutory offense that prescription of the "allowable unit of prosecution" determines the scope of protection afforded by a prior conviction or acquittal, just as the Supreme Court of the United States reiterated in *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978). But to characterize that statement as showing a kind of "deference" to Congress that this Court should show to

the Legislature is to call it something it is not. The opinion of the Supreme Court went on to explain in the margin that since "only a single violation of a single statute is at issue here," there was no need to analyze the case under familiar jeopardy tests "used to determine whether a *single transaction* may give rise to separate prosecutions, convictions and/or punishments *under separate statutes.*" Patently the Supreme Court is not showing "deference" to the point of abdicating its own constitutional duty and function to decide jeopardy questions under doctrines *it* has developed over the years— and the cases cited and discussed in the footnote, *Sanabria*, supra, U.S. at 70, 98 S.Ct. at 2182, reflect there are several in the federal judicial system as well.

Nor is it disconcerting enough that two theories have developed in analyzing what constitutes the "same transaction" for purposes of applying the carving doctrine. This is but a recognition that human criminal behavior does not uniformly follow the same pattern. In trying to decide what is the "same offense" for constitutional jeopardy purposes the Supreme Court of the United States has developed essentially two different theories.

The *Blockburger* test, set forth in the majority opinion, is only one. There is the *Neilsen* perception as well; it applies, like one of the carving theories, when a number of offenses arise from a continuous transaction. *Ex parte Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889) states:

> "[A] person [who] has been tried and convicted for a crime which has various incidents included in it ... cannot be a second time tried for one of these incidents without being twice put in jeopardy for the same offense." *Id.*, at 188, 9 S.Ct. at 676.[9]

---

8. "That decision [of the Supreme Court of Texas] was followed in this state and was the law when the present insurance statute was enacted, and, if the Legislature had desired to change the law as promulgated by the Supreme Court, it would have been enacted that no parol contract for insurance should ever be valid. This was not done, and the inference will arise that the Legislature *sanctioned the construc-*

*tion* placed upon insurance policies *by the Supreme Court.*"

9. This concept follows *Ex parte Snow*, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887) and distinguishes the principle flowing from the language of *Morey v. Commonwealth*, 108 Mass. 433, that constitutes the foundation of *Blockburger*, supra. See *Gavieres v. United States*, 220 U.S. 338, 342, 31 S.Ct. 421, 55 L.Ed. 489 (1911).

See *Brown v. Ohio*, 432 U.S. 161, 166, n. 6, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977) in which the Supreme Court recognizes that in providing a test for determining what is the "same offense" *Blockburger* and *Nielsen* stand on different footing; it also notices "additional protection" supplied by the more recently enunciated doctrine of collateral estoppel in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In short, neither has the Supreme Court abandoned any test formulated by it early and late in addressing the "same offense" declaration nor is it abashed that there are two theories which may be considered.[10]

Finally, the majority takes pains to note that the carving doctrine is indigenous in Texas—a proposition that will not withstand cursory examination.[11] Even the same unique terminology has been used, without attribution to Texas: "Merely because one element of a single criminal act embraces two persons or things, a prosecutor may not carve out two offenses by charging the several elements of the single offense in different counts . . .," *Robinson v. United States*, 143 F.2d 276, 277 (CA10 1944). And before 1876 when the Supreme

Court of Texas decided *Wilson v. State*, supra, and the former Court of Appeals decided *Quitzow v. State*, supra, the "general rule" had already been discerned from Mr. Bishop (1 Bishop on Criminal Law, 536) in *Jackson v. State*, supra, note 2, at 423.[12]

But if Texas *is* the only state adhering to the carving doctrine, must an established doctrine be abandoned for that reason? Just two years ago a strenuous dissenting opinion in *Orosco v. State*, 590 S.W.2d 121, 124 (Tex.Cr.App.1979) which, one quickly notes, bears striking similarities to the opinion of the Court in the case at bar, did not sway a majority of my Brothers. What public interest persuades them today?

There are sound policy considerations supporting our carving doctrine, not the least of which is that the people of the State of Texas, through its grand jury, assisted by its prosecuting attorney in drawing an indictment against an accused for criminal conduct, are better served by the State "taking its best shot," so to speak, the first time rather than trying to improve on its successive rounds.[13] It is a demonstrable

10. Thus, the assurance in the majority opinion that the Court will decide jeopardy questions with a "strict construction" attitude is baffling. Nothing in the Sixth Amendment remotely states either the tests of *Blockburger* or *Nielsen* or the *Ashe v. Swenson* doctrine of collateral estoppel, nor has the Supreme Court of the United States even claimed they are born of "strict construction." Indeed, as indicated in note 9, *ante*, the *Blockburger* test has been traced back to an opinion of the Massachusetts Supreme Court, with a nodding acknowledgment along the way to Mr. Bishop. See *Burton v. United States*, 202 U.S. 344, 381, 26 S.Ct. 688, 699, 50 L.Ed. 1057 (1906), one of building blocks of *Gavieres v. United States*, supra.

11. "Where an offense is essentially and substantially a single one, the state cannot divide it into two or more offenses and punish for each separately. So, it is held that a single act or transaction may not be split into two or more separate offenses . . .," 22 C.J.S. Criminal Law § 9(1), p. 27. In Kansas, "two separate offenses cannot be carved out of the one criminal delinquency," *State v. Pierce*, 205 Kan. 433, 469 P.2d 308, 312 (Kan.1970).

12. 1 Bish.New.Cr.Law, § 791 reiterated the doctrine:

"One answerable for a criminal transaction may be holden for any crime, of whatever nature, which can be legally carved out of his entire offending. He is not to elect, but the prosecuting power is."

Quoted by the Court in *Kaufman v. State*, 70 Tex.Cr.R. 438, 159 S.W. 58, 64 (1913); in his Eighth Edition (1892), at 478, n. 1 Mr. Bishop supports the text with citations to four English cases, three state cases and one of the Supreme Court of the United States—none from Texas.

13. The majority today and the dissenters in *Orosco v. State*, supra, selectively extract criticism from scholarly writers. Thus, one is not surprised that no mention is made of the thrust at "the skillful prosecutor" who finds it easy to manipulate offense categories so as to "sidestep" jeopardy protections. See Kirschheimer, *The Act, The Offense and Double Jeopardy*, 58 Yale L.J. 513, 525 (1949). And faulting the "same transaction test" without revealing that Kirschheimer sees it as too favorable to an accused, also disregards his solution to the problem: a modified same transaction test with liberalization of practice of amending charging instrument, *id.*, at 534.

tactic, as Kirschheimer proves from the cases, for some prosecutors to hold in reserve facts as well as theories of law to advance when their first efforts do not succeed as desired.[14] That is precisely what the courts have said the carving doctrine was intended to prevent.[15]

The "fundamental unfairness of repeated trials for the same illegal conduct is apparent and has troubled the courts and the legislature," *People v. Golson*, supra, note 9, at 75. The carving doctrine is designed to relieve that fundamental unfairness, though the jeopardy provisions of our constitutions may not. See *People v. Mullenhoff*, supra, note 9, 33 Ill.2d at 450, 211 N.E.2d 244. Thus, in *Herera* supra, in quoting from an earlier New Jersey opinion the Court approved the proposition that "it is better that the residue of the offense go unpunished than, by sustaining the second

indictment, to sanction a practice which might be rendered as an instrument of oppression to a citizen." [16]

The majority of the Court does not make any compelling showing that such policy considerations have suddenly become unsound.[17] Nor has it provided a principled reason to approve that which has long been rejected "as an instrument of oppression." That the Court has encountered "difficulties" in applying the doctrine impugns members of the Court more than the doctrine itself, and suggests that efforts at consistency in application ought to be made before surrendering to a professed inability to do the judicial job.[18]

In abandoning a salutary doctrine extant more than one hundred and five years in this State, a slender majority of the Court exposes the citizens to a risk of deprivation

14. The classic case, of course, is *Ciucci v. Illinois*, 356 U.S. 571, 78 S.Ct. 839, 2 L.Ed.2d 983 (1957). Three of four separate indictments charging Ciucci with murder of his wife and three children, respectively, were tried; the first resulted in 20 years imprisonment, the second in 45 years and, finally, the third produced the death penalty. Though the Supreme Court in a Per Curiam opinion found no violation of due process, Illinois Supreme Court was moved to take remedial action, *People v. Golson*, 32 Ill.2d 398, 207 N.E.2d 68, 75 (1965), and the Illinois Legislature enacted corrective measures, *People v. Mullenhoff*, 33 Ill.2d 445, 211 N.E.2d 744 (1965).

15. Again in *Herera*, supra:
"It was competent for the state to prosecute and convict for either of said offenses which involved the same transaction, but having selected one, no matter if it was the lesser offense, the state is bound by its election; and, having convicted the party for the offense chosen, it cannot proceed against the accused for the other greater offense which involved the same transaction." *Id.*, 34 S.W. at 944–945.

16. *Herera* held that a conviction for assault with intent to murder barred a subsequent prosecution for robbery committed in the same transaction. Trial on the robbery indictment was held after Herrera had been sentenced to serve seven years for the assault with intent to murder and had "served out his time," *id.*, at 943. Truly, the second prosecution and conviction constituted "an instrument of oppression."

17. At least the dissenting opinion in *Orosco v. State*, supra, argued the philosophical notion that "[o]ne should not be permitted to exhibit a weapon to another and commit several offenses against that person and be liable for punishment for only one offense," *id.*, at 125, nor "commit as many crimes against that person as he wishes without fear of punishment except for one crime," *id.*, at 129. But of course even traditional jeopardy tests for the "same offense," e.g., *Blockburger* and *Nielsen*, supra, are designed to provide protection against "multiple punishments for the same offense," *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977).

18. Contrary to the assertion of the majority, this dissenting opinion is not intended to be and may not reasonably be read to "urge" that only one conviction "should be allowed" when an accused engages in several vicious acts against a victim. All the opinion has done in this respect is to report a policy consideration that was identified in the work by one of the scholarly writers·cited by the majority for its purposes. See notes 13 and 14 and accompanying text *ante*. That his 1949 findings are invalid and his conclusions are unsound have not yet been demonstrated by the majority. Solutions proposed by Kirchheimer and others should at least be examined before problems in applying the carving doctrine are solved simply by cutting it out of the law.

of liberty unequaled in the annals of Texas jurisprudence.[19]

I dissent.

## OPINION DISSENTING TO DENIAL OF LEAVE TO FILE APPELLANT'S MOTION FOR REHEARING

CLINTON, Judge, dissenting.

On original submission the Court found that the indictment for aggravated rape is fundamentally defective and, accordingly, ordered that indictment in Cause No. 10,170 dismissed. On State's Motion for Rehearing the Court does not disturb the relief thus granted. There remains before us, then, contentions with respect to aggravated robbery, Cause No. 10,169, and aggravated kidnapping, Cause No. 10,171. As to them, so anxious to abandon the carving doctrine, the opinion of the Court on rehearing did not undertake to place those alleged offenses in factual context in order to address the jeopardy problems.

The charging portion of the aggravated robbery indictment is set out verbatim in the opinion on original submission, and need not be reproduced here. Suffice to say that the aggravation alleged is that on or about March 21, 1975 appellant did "knowingly threaten and place the owner in fear of imminent bodily injury and death by then and there using and exhibiting a deadly weapon, to wit, a firearm." The owner is identified by name indicating she is a female.

The aggravated kidnapping indictment alleged, in terms of V.T.C.A. Penal Code, § 20.01(2)(A) and § 20.04(a)(3), that also on or about March 21, 1975 appellant did intentionally and knowingly abduct the same named female he is alleged to have robbed "with the intent to facilitate his own flight after the commission of a felony, to wit: Aggravated Robbery."

The owner *cum* kidnap victim, whom we will call Mae, was then thirty-nine years of age, employed as a clerk at a convenience store on Highway 288 in Arcola, Fort Bend County. At about 11:00 p.m. on March 25, 1975, with the aid of her nineteen year old daughter and a seventeen year old girl friend, Mae had just closed the store and was locking outside ice machines when appellant walked up behind her. Producing a gun, he ordered her to unlock the door and, shortly, made the three females reenter the place; brandishing and threatening to use the pistol, he had the teenagers lie face down on the floor while Mae located and gave him all the money in the store. Then he directed Mae to cut the telephone cord and, kneeling down with Mae, told her daughter and the girl friend to remain lying down for thirty-five minutes, that he was taking Mae with him and if she wanted her mother alive she better not move or she would never see her mother again. Taking two packages of cigarettes and two six packs of beer, appellant had Mae close her eyes, and he led her to a nearby station wagon.

That done, he drove around back roads, chattering all the time about sorrowful events in his life,[1] until he managed to get stuck at an isolated dead end, where eventually at gunpoint he required Mae to commit a round of deviate sex acts and other indecencies, and then he raped her, twice. While he slept Mae made her escape. At about five o'clock in the morning, still supine in the station wagon, appellant was

---

**19.** Belatedly asserted by the majority is the bald statement that "*the* compelling reason" for abandoning the carving doctrine is "that it encourages crime." Were there the slightest suggestion of support for that proposition, the majority opinion needs to reveal it, for criminology would be mightily advanced with that knowledge which somehow has eluded the best minds in the field. But, of course, there is none.

**1.** The opinion on original submission recounts at least two prior commitments to mental institutions and his ultimate escape from the second one. After first telling Mae he was going to kill her because he knew that her daughter had contacted the law, appellant relented and then poured out accounts of his brother's dying in his arms in Viet Nam, his wife's leaving him for another man, his own mother's expressed hope that he would die a hero so she could be proud of him—and on and on in similar paranoid vein.

taken into custody without incident by two deputy sheriffs.

Applying the carving doctrine to such a classic situation, on original submission the Court set aside the conviction for aggravated kidnapping. We cited *Orosco v. State*, 590 S.W.2d 121 (Tex.Cr.App.1979) and *Ex parte Curry*, 590 S.W.2d 712 (Tex.Cr.App. 1979) for the proposition that "the carving doctrine precluded convictions for both aggravated robbery and aggravated rape, where it was shown that both offenses resulted from one continuous assaultive transaction against the same victim." It was noted that in *Orosco* it was found that "where the use and exhibition of a knife provided the aggravating circumstances in both offenses, appellant could not be convicted in both." Also relied on were *Phillips v. State*, 597 S.W.2d 929 (Tex.Cr.App. 1980) and *Tatum v. State*, 534 S.W.2d 678 (Tex.Cr.App.1976), pointing out that the latter holds that "convictions for three offenses arising out of a single transaction against a single victim violated the double jeopardy clauses of both the State and Federal Constitutions," and reversed two of the three convictions. Our opinion of original submission was delivered October 15, 1980 and the State's motion for rehearing was ordered filed and set for submission December 15, 1980; along with four other causes the May 12, 1982 majority opinion on State's motion for rehearing abandoned the carving doctrine and opted for the "same offense" test provided by the Supreme Court of the United States in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).[2]

However, dismissing it as dealing with "other double jeopardy matters . . . [which] are not matters pertinent to the decision in this case," p. 824, the majority closed its eyes to the following statement of jeopardy law in *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977):

> "The *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first. * * *
>
> Because we conclude today that a lesser included and greater offense are the same under *Blockburger*, we need not decide whether the repetition of proof required by the successive prosecutions against Brown would otherwise entitle him to the additional protection offered by *Ashe* and *Nielsen*."

*Id.*, n.6, at U.S. 166–167, 97 S.Ct. at 2226.[3]

In the aggravated kidnapping case at bar the State alleged and necessarily had to prove that appellant abducted Mae "with the intent to facilitate his own flight after the commission of a felony, to wit: Aggravated Robbery." To show the requisite intent alleged, the State bound itself to prove commission of the offense of aggravated robbery of Mae. Thus, the conviction for aggravated kidnapping could not be had without proving the same aggravated robbery for which appellant had already been convicted. Under *Nielsen* appellant was twice put in jeopardy for the same offense. See *Harris v. Oklahoma*, supra.

Though the Court unwisely abandons the carving doctrine, as I and Judge Roberts have demonstrated in respective dissenting opinions on State's motion for rehearing,

---

2. *Ex parte McWilliams*, 632 S.W.2d 574 (Tex. Cr.App.1980–1982) was followed by *Ex parte Mike*, 632 S.W.2d 594 (Tex.Cr.App.1980–1982); *Ex parte Russell*, 632 S.W.2d 596 (Tex.Cr.App. 1982); *Ex parte Davis*, 632 S.W.2d 597 (Tex.Cr. App.1982) and *Ex parte Silvas*, 632 S.W.2d 598 (Tex.Cr.App. 1982)—all delivered the same day.

3. The proposition of jeopardy law usually drawn form *Ex parte Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 is that "where . . . a person has been tried and convicted for a crime which has various incidents in it, he cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offense," *id.*, at 188, 9 S.Ct. at 676. See, e.g., *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977).

the majority is now about to create new confusion among the bench and the bar by pretending that *Blockburger* provides the only test to determine "whether successive prosecutions impermissibly involve the same offense," and by refusing to analyze the jeopardy issues that come before us in light of *Nielsen*, as well.

To such judicial folly, I must dissent.

ONION, P.J., and TEAGUE, J., join.